GEORGE R. McCLELLAN AND MARIE M. McCLELLAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90664. Promulgated June 18, 1940.

*William R. Spofford, Esq.*, and *Charles S. Jacobs, Esq.*, for the petitioners.

*Paul E. Waring, Esq.*, and *David B. Herman, Esq.*, for the respondent.

OPINION.

DISNEY: The Commissioner proposed a deficiency in income tax of $4,346.10 against petitioners for the taxable year ended December 31, 1934. The petitioners allege the Commissioner erred in determining that the loss sustained by George R. McClellan in 1934, when he withdrew as a partner in Parrish & Co. and the partnership discharged its obligation to him as a withdrawing partner, was a capital

loss limited to $2,000 rather than an ordinary loss. Other errors assigned were abandoned.

The major portion of the facts was stipulated. Inasmuch as we hereinafter set forth an epitome of all facts found, we here adopt, by reference and without repetition, as our findings those facts stipulated, and further find from the oral testimony and exhibits as follows:

George R. McClellan on January 1, 1930, entered an agreement of copartnership in Parrish & Co., which provided for withdrawal by a partner upon written notice given 60 days before the end of the current year. He withdrew from the partnership in 1934 without giving the required notice. Because of his ill health, and after discussion of the matter at a meeting of the partners, it was agreed that he might withdraw. No separate agreement of settlement was worked out, but the terms of the agreement of copartnership relating to withdrawals were followed. George R. McClellan wished his cash to stay with Parrish & Co., so that he could invest it; therefore, the $499,757.15, representing payment to him and agreed upon as his credit balance after his withdrawal, was transferred from his capital account to a customer's account. The partnership had $944,518.37 in cash, and he could have withdrawn the $499,757.15 in cash, there being no restriction of any kind on his use of his customer's account.

The articles of copartnership provided that, upon the death or withdrawal of a member, stock exchange seats and buildings owned by the partnership should be revalued as of the end of the year. Such adjustment of values, though not provided for otherwise than upon death or withdrawal of a partner, was made at the end of each year upon the books of the partnership, as a matter of policy and what was considered proper accounting. Such revaluation resulted in loss in the amount claimed by petitioners.

The question we have for solution here is whether or not a loss sustained by a partner upon withdrawing from a partnership is an ordinary loss or a capital loss. The respondent in determining the deficiency determined that there was capital loss and limited same to $2,000. Upon brief he suggests that there was no loss at all, but, inasmuch as no such suggestion is made in the pleadings, $2,000 capital loss is allowed by the deficiency notice, which refers to a loss as taken, and no effort has been made to increase the deficiency by the amount by which it would increase if there were no loss at all, we consider that there was a loss and decide only the question as to whether it was ordinary or capital. The petitioners also have simplified the question, for they state that they "freely concede for the purpose of this case that an interest in a partnership is a capital

asset." Further, it is stated upon brief that it is admitted that if George R. McClellan had sold or exchanged his interest in the partnership, the loss would have been a capital loss, subject to the limitations prescribed by section 117 of the Revenue Act of 1934. In other words, the only question left for our consideration is whether or not there was a sale or exchange of petitioner George R. McClellan's interest in a partnership.

The salient facts involved may be epitomized as follows: Petitioners are husband and wife and filed a joint income tax return for the year 1934. Petitioner George R. McClellan, hereinafter referred to as the petitioner, entered a partnership in 1920 and withdrew therefrom in 1934. By the terms of the original partnership agreement, any partner could withdraw by giving notice 60 days before the end of the year and upon such withdrawal would, in effect, receive back his capital contribution adjusted by his share of profit or loss, including his share of appreciation or diminution of the value of seats in stock exchanges and certain real estate. Petitioner did not give such notice, but by agreement was permitted to withdraw without it. A reserve account was set up by the partnership as to such stock exchange seats and real estate and at the time of withdrawal by petitioner he was debited with $34,070.05 because of diminution in the value of such real estate and stock exchange seats, as set forth in the reserve accounts. This represented petitioner's pro rata share of $177,870 shrinkage in value of stock exchange seats and $47,000 shrinkage in value of real estate (as set up in the reserve account), petitioner's pro rata share of the shrinkage in value as to stock exchange seats being $26,949.08 and as to real estate being $7,120.97. The amounts of shrinkage in value, as reflected in the reserve accounts, were never allowed as deductions in determining the taxable distributable income of the partnership. Petitioner at the time of withdrawal from the partnership received $499,757.15, that amount being transferred from his capital account to a customer's account in his name. His original contribution was $667,634.32. During the partnership his distributable share of partnership earnings as adjusted by the Commissioner and as accepted by petitioner was $260,039.89. During the term of the partnership he withdrew $319,707.01, and $74,140 was charged to his account in 1934 because of the purchase by the partnership of a seat on the stock exchange in lieu of another seat of the same value which had stood in the name of George R. McClellan, but in fact belonged to the partnership, which seat thereafter belonged in fact to George R. McClellan. The result of the capital contribution, earnings, withdrawals, and transfer of balance of $499,757.15 to his credit upon his withdrawal was

a loss to him of $34,070.05, resulting from shrinkage in value, as set up in the reserve accounts and proportionately charged to him, of the stock exchange seats and real estate owned by the firm, which assets with all other assets of the firm remained with it after the withdrawal of George R. McClellan.

We do not think the fact that a particular stock exchange seat owned by the partnership, but standing in the name of George R. McClellan, was in 1934 recognized as his individual property, another being purchased by the partnership for $74,140 and charged to him, has any effect upon the question here, for in effect George R. McClellan merely purchased a stock exchange seat for himself and the purchase price was paid by the partnership for him and was charged to his account with the partnership. We, therefore, do not further consider that transaction.

In *Annie Laurie Crawford et al., Executors*, 39 B. T. A. 521, 525, we distinguished between an ordinary dissolution of a partnership and the distribution of its assets to its members, and a situation where a partner "sells his interest to another or retires from the partnership, upon an agreed consideration and the business is continued", and said: "In such cases, title to the retiring partner's interest passes to another, and a closed transaction takes place. *Hill* v. *Commissioner*, 38 Fed. (2d) 165; *Pope* v. *Commissioner*, 39 Fed. (2d) 420." In the *Hill* case, *supra*, payments were made to the estate of a deceased partner in accordance with the original partnership agreement, and it was held that "as regards the individual petitioners the payments made to the estate are not deductible as ordinary or necessary expenses for they were made by the petitioners in the purchase of a capital asset." In the *Pope* case, *supra*, the situation was essentially the same and it was held, following *Hill* v. *Commissioner*, *supra*, "that the Board was warranted in ruling and finding that a sale was effected of the interests of the two estates to the new partnership." In *Dudley T. Humphrey*, 32 B. T. A. 280, the petitioner by agreement withdrew from a partnership and assigned his interest therein for cash and notes. We held that the petitioner's interest in the partnership, held for more than two years, was a capital asset and that the gain from the sale was taxable at capital gain rates.

The petitioner, however, in effect argues that he did not sell or exchange the interest in the partnership and summarizes his contention upon brief by stating in substance that he sustained a loss because the cash which he received upon withdrawal from the partnership was less than the cash contribution to the partnership at the beginning, plus the distributive share of partnership income over the period of the partnership and minus the total of the withdrawals during such

period; and that therefore he sustained an ordinary loss. The error in this view, in our opinion, is in the idea that the petitioner has simply received a pro rata share of the value of the partnership assets, as upon an ordinary dissolution of the partnership and distribution of its assets, whereas in fact he, retiring from the partnership, received only cash and parted with his interest in the partnership and its assets, including cash and certain assets, to wit, real property and a seat upon the New York Stock Exchange. It is stipulated that the total of the shrinkage in value of the exchange seat assets and the reduction in value of real estate allocated to petitioner is claimed by petitioner as an ordinary loss. By the original agreement of partnership, the petitioner had the right, upon giving written notice 60 days before the end of the year, to withdraw from the partnership and receive therefrom the original contribution, increased or decreased by the proportionate share of gain or loss upon real estate and seats in the stock exchange owned by the partnership. However, the necessary notice was not given and the withdrawal from the partnership was not in pursuance of the original agreement, but the other partners, nevertheless, permitted withdrawal upon the same terms as originally provided by the partnership agreement. It thus appears that the withdrawal was upon terms agreed upon between the partners, i. e., the original terms were adopted, though the petitioner had no right thereto. The terms might have varied greatly from the withdrawal of the same amount of money contributed originally, adjusted only by the profit or loss taken because of diminution or appreciation in the value of the seats on the stock exchange and real estate. If the parties had been unable to agree upon the same terms as agreed upon in the original agreement providing for 60 days' notice, it is obvious that a very different amount might have been paid to the petitioner upon the withdrawal from the partnership, so that it appears that what was actually received was a payment in cash in consideration of the surrender of the interest in the partnership, including its assets, and it becomes clear that for an agreed consideration the interest in the partnership was sold to the remaining members. It being agreed that such interest was a capital asset, it follows that section 117 of the Revenue Act of 1934 is properly applied by the respondent.

In *Bull* v. *United States*, 295 U. S. 247, it is said:

Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, the transaction is a sale, and payments made to the estate are for the account of the survivors. * * *

"The above language was quoted by us in *W. Frank Carter*, 36 B. T. A. 60, 69, wherein we held that, where members of a partner-

ship entered into an agreement providing that in case of the death of any member his estate should receive certain sums in full payment of his interest in the firm and its assets, the transaction was a sale. To the same effect is *Estate of Bavier C. Miller*, 38 B. T. A. 487. In *Munson* v. *Commissioner*, 100 Fed. (2d) 363, we find the converse of the situation herein involved. There the taxpayer and a former partner dissolved their partnership. The other partner contributed to the partnership a membership in the New York Stock Exchange, and the partnership agreement provided that in the event of dissolution the membership should be sold or retained by the partner at his option; that if sold, the gain or loss, being the difference between the sale price and the cost, should be apportioned between the partners; that if retained by the partner the difference between the liquidating value and the cost should be equally divided between the parties. The agreement terminating the partnership provided that the other partner elected to retain the membership and acknowledged his indebtedness to the petitioner for one-half of the difference between the cost thereof and a liquidating value agreed upon. The money difference was later paid to the petitioner. The court held:

> The Board erred in holding that the sum was ordinary income taxable at normal and surtax rates, rather than a capital gain taxable at 12½%.

It was further stated:

> * * * In determining whether the seat was a firm asset it could make no difference whether it was sold to a third party, as might have been done, or was retained by Adrian under an agreement to account for the increment in excess of the value of $96,000 at which it was originally contributed. After the arbitration committee of the Exchange had estimated the profit at $261,500 it became quite unnecessary formally to credit Adrian with receipt of the seat in payment both of his capital contribution of $96,000 and of his share in the gain realized and then to pay Munson $130,750 less $2,500 expended for counsel fees, on account of his share of the profits. * * *

It is apparent that the present situation differs from that in the *Munson* case, *supra*, only in that herein there was loss by virtue of depreciation in the value of real estate and stock exchange seats instead of gain by virtue of appreciation thereof as in the *Munson* case. The court there held that the profit was capital gain. Cases cited by petitioner are found to contain elements distinguishing them from the present controversy. We hold that the loss suffered by the petitioner herein was a capital loss.

We find no error in the determination of deficiency by the respondent.

*Decision will be entered for the respondent.*