H. CLINTON POLLACK, JR., AND WENDY POLLACK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3049-74.    Filed October 27, 1977.

H. Clinton Pollack, Jr., pro se.
*Peter J. Panuthos,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Year | Deficiency |
|---|---|
| 1966 | $2,545.03 |
| 1969 | 1,433.98 |

The deficiency for 1966 resulted from a disallowance by

respondent of a claimed net operating loss carryback from 1969. We are to decide whether petitioner H. Clinton Pollack, Jr., is entitled to an ordinary loss treatment on the disposition of his interest in a limited partnership during 1969.

## FINDINGS OF FACT

Certain facts have been stipulated by the parties.

Petitioners H. Clinton Pollack, Jr., and Wendy Pollack are husband and wife who resided in Greenwich, Conn., at the time they filed their petition with this Court. They filed joint Federal income tax returns for the years in issue with the North Atlantic Service Center, Andover, Mass.

Petitioner H. Clinton Pollack, Jr. (hereinafter referred to solely as petitioner), is a management consultant who was, during the years in question, associated fulltime with a large New York City consulting firm. Petitioner's duties consisted primarily of rendering services pursuant to contracts entered into by his employer. Such services included providing advice in the areas of marketing, business communications, and the structuring or restructuring of businesses. Although he was employed full time, petitioner sought and apparently accepted outside consulting work unassociated with his employer's business. Such is not an unusual case. Performing outside work is an accepted practice in the consulting field so long as no conflict of interest arises between the employer's work and the outside work.

In 1968 petitioner became acquainted with Leonard Turk, the designated general partner of a soon to be formed limited partnership named Millworth Associates. The purpose of the limited partnership was to invest in fledgling and troubled business concerns with the idea of developing such businesses into successful enterprises. As a result of his discussions with Turk, it was petitioner's understanding that the businesses to be acquired by Millworth would require services of various professionals such as management consultants, accountants, and attorneys. It was petitioner's further understanding that it would be the policy of the limited partnership to offer, if possible, any such professional assignments to the limited partners of Millworth who practiced these professions. In this regard, petitioner was aware of several such professionals among the subscribing partners in Millworth, including attor-

neys and accountants. It was petitioner's understanding that if he were to become a limited partner in Millworth, Turk, as general partner, would supply him with a considerable amount of consulting work. In August 1968 in anticipation of receiving a significant number of profitable consulting assignments, petitioner borrowed $50,000 and became a limited partner in Millworth.

The scheme of the partnership, as originally conceived—to provide its limited partners with professional assignments—did not eventuate. Millworth's emphasis, as petitioner viewed it, was changing to that of an investment club or company. Petitioner, however, was not interested in a passive investment posture in any way, having entered the partnership solely for the reason of securing a new source of potential consulting business.

In December 1969 petitioner therefore decided to withdraw from Millworth, since it failed to serve his purposes. As a result of the liquidation of his interest, petitioner incurred a loss of $27,069.

On his Federal income tax return for 1969 petitioner claimed this amount as an ordinary business loss. Additionally, he filed an application for a tentative refund from the carryback of a net operating loss for the year 1969 of $15,743. Both deductions were subsequently disallowed by respondent.

OPINION

At issue is the character of loss, whether capital or ordinary, incurred by petitioner on the disposition of his interest in a limited partnership.[1]

Generally, the treatment accorded gain or loss from an isolated transaction constituting the sale or exchange of a partnership interest is covered by section 741[2] which specifically provides that "Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751." Similarly, the regulations provide that "The sale or exchange of an interest in a partnership shall * * *

---

[1] Petitioner's disposition of his partnership interest technically involved a liquidation of such interest under the applicable statutory provisions. However, the resulting loss is considered as a loss from the sale or exchange of a partnership interest. Secs. 761(d), 736(b), and 731(a)(2), I.R.C. 1954. The character of such loss therefore falls within the ambit of sec. 741.

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

be treated as the sale or exchange of a capital asset." Sec. 1.741-1(a), Income Tax Regs.

The focus of the present controversy is whether section 741, if applicable, or section 1221 is dispositive of the treatment accorded the gain or loss realized by a partner on the sale or exchange of a partnership interest.

Petitioner maintains that the interest involved failed to qualify as a capital asset under section 1221 and that, despite the language of section 741, the interest constituted an ordinary asset in his hands. Consequently, he concludes, the loss he suffered on its disposition entitles him to either an ordinary and necessary business expense deduction under section 162(a) or an ordinary business loss deduction under section 165(a).[3]

Respondent, on the other hand, contends that except for specific exceptions not relevant herein, section 741 mandates the loss be characterized as a capital loss. We agree with respondent that both the legislative history of section 741 and its language indicate that Congress intended it to operate independently of section 1221 so as to be dispositive of the character of petitioner's loss.

Section 741 was enacted by Congress as part of subchapter K of the Internal Revenue Code of 1954. Subchapter K was enacted to resolve the chaos which permeated the partnership area under the 1939 Code. While it would serve no useful purpose here to attempt to articulate each and every difficulty which led to the enactment of subchapter K, the general situation can be aptly summarized by the following observation contained in its legislative history:

> The existing tax treatment of partners and partnerships is among the most confused in the entire income tax field. The present statutory provisions are wholly inadequate. The published regulations, rulings, and court decisions are incomplete and frequently contradictory. As a result partners today cannot form, operate, or dissolve a partnership with any assurance as to tax consequences.
>
> \*       \*       \*       \*       \*       \*       \*
>
> Because of the vital need for clarification, your committee has undertaken the first comprehensive statutory treatment of partners and partnerships in the history of the income tax laws. In establishing a broad pattern applicable to partnerships generally, the principal objectives have been simplicity, flexibility,

---

[3]In support of his position that the interest involved represents an ordinary asset in his hands, petitioner relies upon the judicial exception to sec. 1221, I.R.C. 1954, carved out by *Corn Products Co. v. Commissioner*, 350 U.S. 46 (1955), and the myriad of cases which have since applied such exception.

and equity as between the partners. H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 65 (1954).

A prime example of such confusion under the 1939 Code was the treatment of gain or loss from the sale or exchange of a partnership interest. Prior to 1950 the Government took the position, under the so-called aggregate theory of partnership, that the selling partner actually sold his undivided interest in each of the partnership's assets, and the character and amounts resulting from the disposition of those assets should be considered individually.[4] See *Commissioner v. Lehman*, 165 F.2d 383 (2d Cir. 1948), affg. 7 T.C. 1088 (1946), cert. denied 334 U.S. 819 (1948).

This position, however, found no acceptance in the courts, which consistently held a partnership interest to be a capital asset in its entirety regardless of the nature of the underlying partnership assets. See *Swiren v. Commissioner*, 183 F.2d 656 (7th Cir. 1950), revg. a Memorandum Opinion of this Court dated Oct. 11, 1949, cert. denied 340 U.S. 912 (1951). In response, the Government in 1950 reversed its position in G.C.M. 26379, 1950–1 C.B. 58, stating that:

the sale of a partnership interest should be treated as the sale of a capital asset under the provisions of section 117 of the Internal Revenue Code [of 1939].

The result of the Government's concession, however, was to engender the use of the "collapsible partnership" device, by which a partner was able to convert his share of what would otherwise be ordinary income to capital gain by means of the sale of his partnership interest.[5]

Faced with this situation, Congress, in the 1954 Code, sought to eliminate the confusion on this point by codifying the Government's concession in G.C.M. 26379 and, at the same time, reduce the availability of the collapsible partnership as a tax avoidance device. See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 71 (1954). Congress accomplished its dual purpose by enactment of section 741, which treated the sale of a partnership interest as the sale of a capital

---

[4]Such was not always the Government's consistent position, especially when a loss was incurred on the sale of the interest. See *McClellan v. Commissioner*, 42 B.T.A. 124 (1940), affd. 117 F.2d 988 (2d Cir. 1941).

[5]see Jackson, Johnson, Surrey, Tenen, and Warren, "The Internal Revenue Code of 1954: Partnerships," 54 Colum. L. Rev. 1183, 1216 (1954).

asset, and section 751, which specifically excluded from capital gain or loss treatment that portion of the partnership interest representing income from unrealized receivables and substantially appreciated inventory items. See S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 96 (1954).[6]

In view of the foregoing legislative record and the plain language of the statute itself, we conclude that Congress intended section 741, if applicable, to provide capital gain or loss treatment on the sale or exchange of a partnership interest by a partner without regard to section 1221.[7] Indeed, congressional use of the phrase "shall be considered as" in section 741 is unambiguous and mandatory on its face.[8] See *Helvering v. Flaccus Leather Co.*, 313 U.S. 247 (1941). Furthermore, the singular meaning of such phrase is demonstrated by its consistent interpretation in sections 731, 735, 736, and 751. See secs. 1.731–1(a)(3), 1.735–1(a), 1.736–1(a)(4), and 1.751–1(a)(1), Income Tax Regs. In fact, where Congress has intended section 1221 to apply despite similar statutory specificity, it has generally either expressly or impliedly said so. See, e.g., secs. 302, 331, 1232, 1233; compare sec. 1235.

Accordingly, we hold that petitioner realized a capital loss on the disposition of his limited partnership interest in Millworth Associates, irrespective of his motive in acquiring such interest.

*Decision will be entered for the respondent.*

Reviewed by the Court.

TANNENWALD, *J.*, dissenting: The applicability of the *Corn Products* doctrine in the context of a business related investment has recently been the subject of an exhaustive analysis by this

---

[6] See also sec. 706, I.R.C. 1954, for a further exception to the capital gain or loss treatment accorded the transferor partner.

[7] Having concluded that sec. 1221, I.R.C. 1954, is not applicable, we need not consider whether the *Corn Products* doctrine exception to that section is applicable in this case. See *Corn Products Co. v. Commissioner*, 350 U.S. 46 (1955).

[8] Respondent has so interpreted the statute for many years. See sec. 1.741–1(a), Income Tax Regs.; Rev. Rul. 59–109, 1959–1 C.B. 168. Clearly, such interpretation is not unreasonable in light of the legislative record and the language of the statute. See *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496 (1948). Furthermore, while the present case is one of first impression, this Court has likewise previously assumed the result reached herein. See, e.g., *Coven v. Commissioner*, 66 T.C. 295, 303 (1976); *Holbrook v. Commissioner*, T.C. Memo. 1975–294.

Court in *W. W. Windle Co. v. Commissioner*, 65 T.C. 694 (1976). Although we found the doctrine was not applicable in that case, we recognized that under certain conditions it would continue to apply and cause an investment in corporate stock to be treated as business related for tax purposes. See also *Bell Fibre Products Corp. v. Commissioner*, T.C. Memo. 1977–42, on appeal (7th Cir., Sept. 9, 1977). On the basis of the record herein and taking into account the fact that I was not the trial judge, I am not prepared to decide whether or not petitioner has met the requisite conditions.

My problem is with the majority's conclusion that as a matter of law the *Corn Products* doctrine does not apply to the sale or disposition of an interest in a partnership. Neither the legislative history of section 741 nor logic supports this result.

Prior to 1950, the Government took the position that a sale or disposition of an interest in a partnership should be treated as a sale or disposition of the partner's undivided interest in each of the partnership's assets. The courts consistently rejected this position and held that a partnership interest should generally be treated as a capital asset under section 117 of the Internal Revenue Code of 1939 (predecessor of 1954 Code section 1221). In response, the Government reversed its position. G.C.M. 26379, 1950–1 C.B. 58. This was the existing law when the 1954 Code was enacted and the legislative history indicates that Congress, in section 741, intended to codify this rule. H. Rept. 1337, 83d Cong., 2d Sess. 70 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 96 (1954).

Since section 741 was merely a codification of the general treatment of a partnership interest as a capital asset under the predecessor of section 1221, it should not be viewed as a bar to ordinary income or loss treatment in situations that are inconsistent with the basic concept of a capital asset as an investment. In *Corn Products Co. v. Commissioner*, 350 U.S. 46 (1955), the Supreme Court held that the definition of capital asset in the 1939 Code, sec. 117 (now sec. 1221), must be construed narrowly and its exceptions construed broadly to effectuate Congress' purpose. The Court interpreted legislative intent as follows:

Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss. [350 U.S. at 52.]

If petitioner's investment represented shares of stock in a

corporation rather than an interest in a limited partnership, this Court would presumably consider whether the *Corn Products* doctrine applies. *W. W. Windle Co. v. Commissioner, supra.* I do not think that the tax treatment of petitioner's transaction, insofar as that doctrine is concerned, should be different because he invested in a partnership rather than a corporation. To be sure, there may be limits to the application of the doctrine. See *W. W. Windle Co. v. Commissioner, supra* at 713. But the existence of such limits should not be extended to an absolute refusal to apply the doctrine. In other areas, we have seen fit to apply general principles of tax law in overriding what appeared to be specific statutory language. Thus, we have utilized the tax benefit rule in cases to which sections 336 and 337 otherwise applied. *Tennessee Carolina Transportation, Inc. v. Commissioner,* 65 T.C. 440 (1975), on appeal (6th Cir. Aug. 4, 1976); *Estate of Munter v. Commissioner,* 63 T.C. 663 (1975). While I recognize that the *Corn Products* doctrine may not have the pervasive applicability of the tax benefit rule, there is at least a useful analogy between the two principles as far as the instant case is concerned.[1]

SIMPSON, *J.*, agrees with this dissenting opinion.

---

[1] I note, by way of contrast, the broadened applicability of capital gain treatment accorded certain taxpayers in the business of inventing by sec. 1235. In this situation, unlike the instant situation, the literal statutory language is augmented by clearly supportive legislative history. See S. Rept. 1337, 83d Cong., 2d Sess. A 280 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 440 (1954).