T.C. Memo. 1997-442


UNITED STATES TAX COURT


FRED L. BAKER AND LISA A. POWERS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25050-95.                    Filed September 29, 1997.


<u>Fred L. Baker</u>, for petitioners.

<u>Carmino J. Santaniello</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a deficiency in petitioners' 1990 Federal income tax in the amount of $43,446.

After concessions, the only issue for decision is whether a $65,316 loss claimed by petitioner Fred L. Baker (hereinafter petitioner) should be treated as an ordinary or capital loss.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and supplemental stipulation of facts are incorporated herein by this reference. At the time the petition was filed, petitioners resided in New Milford, Connecticut.

Petitioner was a practicing attorney during the relevant period. Petitioners timely filed their 1990 Federal income tax return using the cash receipts and disbursements method of accounting.

Prior to June 29, 1987, Raymond Staron held an option to purchase commercial property located at 1835 Post Road East in Westport, Connecticut, for which he had paid $100,000. Hereinafter, 1835 Post Road East will be referred to as the property. The property consisted of approximately one-half acre with four separate buildings. Raymond Staron sought out others who would be willing to invest in the property. On June 29, 1987, petitioner, Bernard Staron, George Allingham, and Raymond Staron purchased the property for $1.2 million. They acquired title to the property as tenants in common. The purchasers financed 100 percent of the purchase price with a $1.2 million loan from Citytrust. Each of the individual purchasers signed a note and mortgage on the property for the $1.2 million loan.

Neither the note nor the mortgage limited the purchasers' individual liability to Citytrust.

At the time of the purchase, petitioner and the three other purchasers intended to sell the property as soon as possible. Because of a change in economic conditions, the property could not be sold. As a result, the property continued to be rented to tenants through 1990. In February 1987, a checking account was opened in the name of BASS and was thereafter used to deposit rental income and pay expenses related to the property. BASS is an acronym using the first letters of the last names of Messrs. Baker, Allingham, Raymond Staron, and Bernard Staron.

Gross income and deductions related to the property for 1987 were reported on a U.S. Partnership Return of Income (Form 1065). This partnership return was filed using the name "Bass Associates, George D. Allingham Gen Ptr".[1] Bass Associates' 1987 partnership return reported gross income of $47,329, total expenses of $144,988, and a net loss of $97,659.

On Schedules K-l, Partner's Share of Income, Credits, Deductions, etc., attached to the 1987 partnership return, the partners' percentages of profit, loss, and ownership were reported as follows:

---

[1]Bass Associates had acquired an employer identification number that it used on its partnership returns for the years 1987 through 1990.

|  | Partner's percentage of: | | |
| Partner | Profit | Loss | Ownership of capital |
| Raymond Staron | 45% | 45% | 45% |
| George D. Allingham | 25% | 25% | 25% |
| Fred L. Baker | 20% | 20% | 20% |
| Bernard Staron | 10% | 10% | 10% |

The 1987 Schedule K-1 for petitioner reflected his distributive share of partnership loss from rental real estate activity as $19,532.

Partnership returns were also filed for Bass Associates for the years 1988, 1989, and 1990. Each of these returns contained Schedules K-1 reflecting the same percentage share of profit, loss, and ownership. These partnership returns reported losses from rental real estate activity for 1988, 1989, and 1990 in the respective amounts of $108,278, $114,015, and $102,867.[2] The Schedules K-1 attached to the partnership returns reported petitioner's share of the partnership's loss from rental real estate activities for 1988, 1989, and 1990 in the respective amounts of $21,656, $22,803, and $20,573.

Petitioners did not report any losses attributable to Bass Associates on their 1987, 1988, or 1989 individual income tax

[2]The partnership returns reported gross income and expenses from rental real estate as follows:

|  | 1988 | 1989 | 1990 |
| Gross income | $66,292 | $71,166 | $74,266 |
| Total expenses | 174,570 | 185,181 | 177,133 |

returns; these losses were suspended pursuant to the provisions of section 469.[3]

On December 30, 1990, petitioner conveyed his interest in Bass Associates to Mr. Allingham. The written assignment provided as follows:

WHEREAS, BASS Associates, a Connecticut general partnership, was formed in December of 1986 ("Partnership") consisting of the following partners and their percentage ownership in said Partnership:

| | |
|---|---|
| Fred L. Baker | 20% |
| George D. Allingham | 25% |
| Raymond Staron | 45% |
| Bernard Staron | 10% |

WHEREAS, on December 31, 1986, the Partners d/b/a BASS Associates purchased the land and buildings known as 1835 Post Road East, Westport, Connecticut ("Property"), more particularly described on Schedule A annexed hereto and made a part hereof; and

WHEREAS, the Property is subject to a first mortgage in favor of Citytrust in the original principal amount of $1,200,000 dated June 29, 1987 and recorded in Volume 897 at Page 68 of the Westport Land Records, as amended; and

WHEREAS, Assignor desires to sell, assign, transfer and set over to Assignee all of his right, title and interest in and to said Partnership and Assignee agrees to purchase all of Assignor's right, title and interest in said Partnership; and

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants, conditions and agreements herein contained, the parties hereto do hereby agree as follows:

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1.  Assignor will convey all his interest in the Partnership to the Assignee for the consideration listed herein.

2.  Assignor shall be relieved of fifty (50%) percent of his twenty (20%) percent interest of the liability to Citytrust (i.e. 50% of $1,200,000 = $600,000 x 20% = $120,000).

3.  Assignor shall remain liable to Assignee and the Partnership for fifty (50%) percent of his twenty (20%) percent interest, (i.e. 50% of $1,200,000 = $600,000 x 20% = $120,000).

4.  Assignee assumes the full liability therefor and will indemnify and hold Assignor harmless from any and all claims, liens, etc. in connection with the Partnership.

5.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the day and year first above written.

This document was signed by petitioner and Mr. Allingham.  On December 30, 1990, petitioner executed a quitclaim deed conveying his interest in the property to Mr. Allingham for the stated consideration of $1.  A copy of the quitclaim deed was attached to the assignment of petitioner's partnership interest in Bass Associates.

On petitioners' 1990 income tax return, they reported a loss of $65,316 from the sale of petitioner's interest in Bass Associates.  In statement 7, attached to their return, the loss is explained as follows:

STATEMENT 7 - GAINS AND LOSSES FROM SALE OF ASSETS

BASS ASSOCIATES

SECTION 1231 GAINS AND LOSSES

    PTRSHP INTEREST - BASS

    DATE ACQUIRED 01/01/87  DATE SOLD 12/30/90

| | | |
|---|---|---|
| GROSS SALES PRICE | | 120,000 |
| COST OR OTHER BASIS | 185,316 | |
| ADJUSTMENTS TO BASIS | 0 | |
| ADJUSTED BASIS | | 185,316 |
| TOTAL GAIN OR LOSS | | -65,316 |
| ACTIVITY SUMMARY | | |
| TOTAL SECTION 1231 GAIN OR LOSS | | -65,316 |

On Schedule E, Supplemental Income and Loss, of petitioners' 1990 income tax return, petitioners reported a partnership loss of $71,933 from Bass Associates consisting of a 1990 loss from rental real estate activity of $20,573 and the suspended partnership losses from 1987 through 1989. Statement 5 attached to petitioners' 1990 return indicates that petitioner was a general partner of Bass Associates, which was engaged in rental real estate activity.

### OPINION

The only issue for decision is whether the $65,316 loss that petitioner sustained on December 30, 1990, is an ordinary or capital loss. Losses from sales or exchanges of capital assets

are allowable only to the extent allowed in sections 1211 and 1212. Sec. 165(f). If an individual's capital losses exceed capital gains, section 1211(b) restricts deductions for capital losses to the lower of $3,000[4] or the excess of such losses over gains.

The term "capital asset" is defined in section 1221 as "property held by the taxpayer (whether or not connected with his trade or business)," subject to five specified exceptions. One such exception, section 1221(2), includes real property used in the taxpayer's trade or business.

Gain or loss from the sale of a partnership interest is generally considered as gain or loss from the sale or exchange of a capital asset. Sec. 741; Pollack v. Commissioner, 69 T.C. 142, 145 (1977)(holding section 741 operates independently of section 1221(2)); sec. 1.741-1(a), Income Tax Regs. The gain or loss of a partner on the sale of a partnership interest is the difference between the amount realized and the partner's adjusted basis in the partnership interest. Sec. 1.741-1(a), Income Tax Regs. For purposes of section 741, the "amount realized" includes the transferor-partner's share of liabilities assumed by the transferee. Sec. 752(d).

There is no dispute in this case regarding either the amount or timing of the $65,316 loss. The only issue is whether this

[4]The limit is $1,500 in the case of a married individual filing a separate return.

loss is capital or ordinary. Petitioners recognize that the sale of a partnership interest gives rise to capital gain or loss. Resolution of this issue, therefore, turns on a factual question of whether petitioner's loss resulted from his sale of a partnership interest in Bass Associates, as respondent contends, or whether the loss resulted from petitioner's sale of real property used in a trade or business, as petitioners contend.

Whether a partnership exists for Federal income tax purposes is governed by Federal law. Commissioner v. Tower, 327 U.S. 280, 287-288 (1946); Estate of Kahn v. Commissioner, 499 F.2d 1186, 1189 (2d Cir. 1974), affg. Grober v. Commissioner, T.C. Memo. 1972-240; Frazell v. Commissioner, 88 T.C. 1405, 1412 (1987); sec. 1.761-1(a), Income Tax Regs. The term "partnership" is broadly defined in section 761 as a "syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on," but is not a corporation, trust, or estate. See also sec. 7701(a)(2).

Recognition of partnership for Federal tax purposes requires that the parties conduct some business activity. Estate of Winkler v. Commissioner, T.C. Memo. 1997-4. The regulations in this regard provide as follows:

> Mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. * * * Tenants in common, however, may be partners if they actively carry on a trade, business,

financial operation, or venture and divide the profits thereof. For example, a partnership exists if co-owners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent. * * * [Sec. 1.761-1(a), Income Tax Regs.]

See also sec. 301.7701-3, Proced. & Admin. Regs. Petitioners bear the burden of proving that a partnership did not exist. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Demirjian v. Commissioner, 54 T.C. 1691, 1696 (1970), affd. 457 F.2d 1 (3d Cir. 1972).

In determining whether a particular relationship between persons constitutes a partnership for tax purposes, the intent of the persons involved is the controlling factor. Commissioner v. Tower, supra at 286-287. Since intent is a subjective matter not readily discernable by a trier of fact, a court must rely on objective acts as evidence of intent. Burde v. Commissioner, 43 T.C. 252, 266 (1964), affd. 352 F.2d 995 (2d Cir. 1965). Factors relied upon by this Court include:

The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they

were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. [Luna v. Commissioner, 42 T.C. 1067, 1077-1078 (1964); Alhouse v. Commissioner, T.C. Memo. 1991-652, affd. sub nom. Bergford v. Commissioner, 12 F.3d 166 (9th Cir. 1993).]

Petitioners contend that there never was a partnership. They argue that petitioner and Messrs. Allingham, Raymond Staron, and Bernard Staron never entered into a written partnership agreement, never operated as a trade or business, and never intended to form a partnership.

It is true that there was no written partnership agreement. However, the lack of a written agreement is not dispositive. We have previously held that a partnership existed without a written agreement where other evidence indicated that two or more individuals intended to and did operate as a partnership. McManus v. Commissioner, 65 T.C. 197, 210 (1975), affd. 583 F.2d 443 (9th Cir. 1978); Demirjian v. Commissioner, supra at 1697-1698.

The objective facts regarding Bass Associates contradict petitioners' contention that there was no partnership from 1987 through 1990. The property was rented, rents were collected and deposited into a checking account in Bass' name, and expenses were paid out of the Bass accounts. For each of these 4 years, the income and expenses related to the operation of the property, were reported on partnership returns, and the percentages of each

partner's ownership, profits, and losses were reflected on Schedules K-1.[5]

On petitioners' 1990 income tax return, the operating losses and loss on the sale of petitioner's interest in the venture were clearly and explicitly reported as being from a partnership named Bass Associates. Indeed, the sale of petitioner's interest to Mr. Allingham was pursuant to a written document that explicitly states that it was a sale of a partnership interest. Both petitioner and Mr. Allingham signed this document on December 30, 1990.

It was not until petitioners' loss deduction was challenged that petitioner disclaimed the existence of the partnership. Mr. Allingham, who purchased petitioner's partnership interest pursuant to a written agreement and who prepared the partnership returns and petitioners' 1990 return, testified at trial that he never intended Bass Associates to be a partnership. Neither petitioner nor the other two partners testified. In light of Mr. Allingham's prior actions and representations that Bass Associates was a partnership, we cannot accept the explanation offered by Mr. Allingham at trial.

We find that the $65,316 loss that petitioner sustained in 1990 resulted from the sale of his partnership interest in Bass

---

[5]These percentages were not reflected in the note signed by the partners, wherein they each appear to have become jointly and severally liable to Citytrust. The quitclaim deed to the property is not in evidence.

Associates.  It follows that this loss is a capital loss allowable only to the extent allowed in sections 1211 and 1212.

<u>Decision will be entered under Rule 155</u>.