**HENSEL PHELPS CONSTRUCTION COMPANY, Petitioner-Appellant and Cross-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee and Cross-Appellant.**

**Nos. 81-1326, 81-1625.**

United States Court of Appeals, Tenth Circuit.

March 31, 1983.

Robert S. Rich, Denver, Colo. (Herrick K. Lidstone and Albert Theodore Powers, Denver, Colo., with him on brief) of Davis, Graham & Stubbs, Denver, Colo., for Hensel Phelps Const. Co.

Terry L. Fredricks, Washington, D.C. (John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup and Robert T. Duffy, with him on brief), Dept. of Justice, Washington, D.C., for the C.I.R.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Hensel Phelps Construction Company appeals a decision of the United States Tax Court affirming the Commissioner's determination of a deficiency against it for its tax year ending May 31, 1974. The court held that Hensel Phelps received a partnership interest in that year in exchange for services and failed to include the value of that interest in its taxable income. The court established the amount to be included at $239,151. *See Hensel Phelps Construction Co.,* 74 T.C. 939 (1980). Hensel Phelps challenges the decision of the Tax Court, arguing: (1) the court erred in determining that the partnership interest was received in the tax year ending May 31, 1974 instead of in the prior year; (2) even if the partnership interest was received in the tax year ending May 31, 1974, the court erred in finding that it was received in exchange for services rather than for the taxpayer's capital contribution to the partnership; and (3) even if the interest was received in exchange for services, the court erred in determining the amount to be included in taxable income by failing to take into account the taxpayer's capital contribution.

This case involves the formation of a partnership, Cherry Creek Plaza Associates, by Hensel Phelps and three individuals, Louis Bansbach, Peyton Perry, and Donald Macy. In May 1972 Bansbach, Perry, and Macy entered into an agreement to purchase some undeveloped land. After some negotiation, Hensel Phelps and the three individuals agreed to study the feasibility of constructing an office building on the land. This agreement was reduced to writing in a letter dated July 6, 1972, which provided that the individuals would contribute the land and Hensel Phelps would contribute its contractor's fee for the construction of the office building. The letter targeted October 10, 1972 as the date by which a joint venture agreement should be executed and provided for reimbursement of Hensel Phelps for its out-of-pocket expenses plus 10% for overhead if "we elect to terminate this letter of intent" before that date.

Hensel Phelps and the individual owners of the land began to select and hire engineers, architects, and consultants for the study and planning of the office building. They sought construction financing from General Electric Credit Corporation, and received a loan proposal from that company on April 27, 1973. The proposal was addressed to Cherry Creek Plaza Associates, described as a general partnership. The next written agreement between Hensel Phelps and the three individuals concerning the arrangements for the office building was a letter dated May 3, 1973. It stated that the parties "will proceed at once to form an appropriate entity, probably a limited partnership," to which Hensel Phelps would contribute its contractor's profit and overhead for the building and the individuals would contribute their equity in the land; profits and losses would be shared 50% by Hensel Phelps and 50% by the individuals. The letter also provided that Hensel Phelps would continue to advance all expenses and that if satisfactory financing was not obtained or the building not constructed, Hensel Phelps would be reimbursed 110% of its out-of-pocket expenses from the profits derived from the sale of the land. Hensel Phelps then entered into a contract for the construction of the office building with Cherry Creek Plaza Associates, described as a limited partnership. This contract purported to be effective May 1, 1973, although it appears that it was not actually executed until after August 10, 1973. Construction on the office building began and Hensel Phelps entered into various subcontracts and purchase agreements before June 1, 1973.

The loan commitment was obtained and accepted in July 1973. In August 1973 Hensel Phelps, the three individuals, and a corporation formed by the three individuals —Bansbach, Perry & Macy, Inc. (BPM)— signed a limited partnership agreement. By that agreement BPM and Hensel Phelps were equal sharing general partners and Hensel Phelps and the three individuals were limited partners. The individuals agreed to contribute their equity in the land and Hensel Phelps, in its capacity as a limited partner, agreed to advance the first $300,000 cash required by the partnership. The agreement provided that the partnership would reimburse the individuals for their initial investments and carrying costs in the land. Hensel Phelps was to receive 50% of the profits and losses—5% as general and 45% as limited partner. Hensel Phelps was to receive 80%—5% as general and 75% as limited partner—of the first $1,000,000 of losses; this was later changed to $1,350,-000 after Hensel Phelps contributed an additional $30,000 to partnership capital. The limited partnership filed its first tax return for the period August 1, 1973 to December 31, 1973, in which it stated that the partnership commenced business on August 1, 1973.

■ The first question before us is whether on these facts the Tax Court properly found that the interest in the partnership was received after May 31, 1973. The intent of the parties is a critical factor in determining when the partnership began. See *Commissioner v. Tower*, 327 U.S. 280, 286–87, 66 S.Ct. 532, 535–36, 90 L.Ed. 670 (1946). This is a question of fact, and the findings of the Tax Court will be overturned only if they are clearly erroneous or unsupported by substantial evidence. *Id.* at 287, 66 S.Ct. at 536; *Bratton v. Commissioner*, 193 F.2d 416, 418 (10th Cir.1951). The evidence as to the intent of the parties is conflicting. Hensel Phelps alleges that the intent of the parties is shown by the letters spelling out the agreement, by the significant sums of money that it had expended on the office building prior to June 1, 1973, and by the parties' joint actions

representing themselves to third parties as partners. The Commissioner points to the letter agreements prior to June 1, 1973 as evidence that the parties planned only a future, not a present, partnership because the parties spoke of the partnership in the future tense. The Commissioner also relies on the provisions in the letter agreements reimbursing Hensel Phelps for out-of-pocket costs and overhead if financing was not secured and the building completed; on the differing characterizations of the partnership prior to May 31, 1973; on the partnership income tax return that listed August 1, 1973 as the date that the partnership commenced business; and on the limited partnership agreement executed in August 1973. After reviewing the record, we believe the Tax Court's conclusion that the partnership was formed after May 31, 1973 is supported by substantial evidence.

■ Hensel Phelps also argues that the court erred in finding that the partnership interest was received in exchange for services rather than for its capital contribution of $300,000. The basis of Hensel Phelps' claim is that the limited partnership agreement lists Hensel Phelps' capital contribution of $300,000 but not the contribution of its contractor's fee for constructing the office building. The conclusion Hensel Phelps desires to have drawn is that the capital contribution listed is the only thing given in exchange for the partnership interest. We do not believe that the Tax Court erred in concluding otherwise. Prior agreements between Hensel Phelps and the three individuals specified that Hensel Phelps would contribute its contractor's fee to the partnership to be formed and there is no evidence that the fee was ever paid to Hensel Phelps. With respect to the $300,000, the limited partnership agreement specifies that this money was contributed in Hensel Phelps' capacity as a "limited partner," for which it apparently received a greater share of partnership losses. Because the partnership reported large losses in all of its returns for 1973 through 1976, the unequal

sharing of losses produced a substantial tax benefit for Hensel Phelps. The Tax Court's conclusion that Hensel Phelps received its partnership interests in exchange for both services and capital contribution is supported by substantial evidence.[1]

■ Hensel Phelps' remaining argument is that because the Tax Court held that the partnership interest was worth the value of the services for which it was exchanged, the court should have subtracted the amount of Hensel Phelps' $300,000 capital contribution from the value of the partnership interest in determining the amount to be included in taxable income. This argument is based on a misunderstanding of the Tax Court's conclusion. The amount that the court included in Hensel Phelps' taxable income did not represent the absolute value of the partnership interest. The court stated that "petitioner is taxable upon this amount, which represents the fair market value of petitioner's partnership interest in excess of the amount paid for it by petitioner." 74 T.C. at 954. We find no error in the Tax Court's valuation of the portion of the partnership interest that the taxpayer received in exchange for services.

Because of our disposition of this case we need not reach the issue raised in the Commissioner's cross-appeal.

AFFIRMED.

---

1. Hensel Phelps does not argue that in the instant case, receipt of a partnership interest in exchange for services is not a taxable event requiring recognition of ordinary income to the recipient. *See Diamond v. Commissioner,* 492 F.2d 286, 291 (7th Cir.1974); *United States v. Frazell,* 339 F.2d 885 (5th Cir.1964), *cert. denied,* 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965).