GENE M. FRAZELL AND ALICE M. FRAZELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 41891-86. Filed May 27, 1987.

---

[15]Respondent has conceded that the pumphouse is recovery property.

*Michael A. Shea* and *Miki Okumura*, for the petitioners.
*Carol K. Muranaka* and *Margaret A. Martin*, for the respondent.

WILLIAMS, *Judge*:* This case is before us on respondent's motion to dismiss for lack of jurisdiction on the ground that the petition was not timely filed pursuant to section 6213(a) and on petitioners' cross-motion to dismiss for lack of jurisdiction on the ground that the notice of deficiency is invalid because respondent failed to comply with the partnership audit and litigation procedures, section 6221 et seq.[1]

The deficiency is based entirely on adjustments arising out of petitioners' investment in Audio Cassette Teaching Fund (ACTF). The issue we must decide is whether ACTF is subject to the partnership audit and litigation provisions in 1982. Respondent argues that ACTF's first taxable year

---

*By order of the Chief Judge, this case was assigned to Judge Williams for disposition of the parties' cross-motions to dismiss for lack of jurisdiction.

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

commenced in 1983. If so, then the deficiency notice in this case is valid. Petitioner's position is that ACTF's first taxable year began in December 1982, in which case the notice of deficiency is invalid because adjustments to partnership items must be made pursuant to the procedures of section 6221 et seq., which has not been done.

The Commissioner determined a deficiency in petitioners' joint Federal income tax for their 1982 taxable year and additions to tax as follows:

| Year | Deficiency | Sec. 6653(a) addition to tax | Sec. 6659 addition to tax |
|------|-----------|------------------------------|---------------------------|
| 1982 | $2,926 | $146.30 | $877.80 |

### FINDINGS OF FACT

For purposes of the cross-motions, the facts are not in dispute. Petitioners Gene M. and Alice M. Frazell were husband and wife residing at Lakeport, California, when they filed their petition in this case. Respondent mailed a notice of deficiency to petitioners for their 1982 taxable year on April 9, 1986. Petitioners contend that they never received the notice of deficiency.[2] Petitioners received a Statement of Tax Due on Federal Tax Return, Form 3552, dated September 1, 1986, and in response filed their petition with this Court on October 27, 1986. The petition was filed 201 days after the mailing of the notice of deficiency. The petition was, therefore, not timely filed pursuant to section 6213(a) or section 7502.

Richard P. Bryant is, and at all times since ACTF's formation has been, the tax matters partner of ACTF. In October or November 1982, Bryant, as general partner, distributed the original confidential private placement memorandum,[3] a copy of the agreement of limited partnership,

---

[2]There is no requirement that a taxpayer actually receive a notice of deficiency prior to the expiration of the 90-day period during which a taxpayer may file a petition with this Court for redetermination of a deficiency. *De Welles v. United States*, 378 F.2d 37, 39 (9th Cir. 1967); *Pyo v. Commissioner*, 83 T.C. 626, 632-633 (1984); see sec. 6213(a). Sec. 6212(b)(1) provides that respondent is authorized to serve a notice of deficiency at the taxpayer's last known address. Sec. 6213(a) provides that the taxpayer must file a petition for redetermination of the deficiency within 90 days after the notice of deficiency is *mailed*. The notice of deficiency in this case was mailed to the same address as that shown for petitioners on the petition. Petitioners do not contend that the notice was mailed to an incorrect address.

[3]The original confidential private placement memorandum is identical to the confidential private placement memorandum recorded with the State of California on Apr. 7, 1983, *infra*, except for the following changes to the later memorandum:

and a subscription agreement to prospective limited partners.

The private placement memorandum provides, in relevant part:

### THE OFFERING

The Units of Partnership interest offered hereby represent investment in a limited partnership which will be formed to engage in the business of Audio Cassette Teaching Tape(s). The General Partner has set a minimum subscription funding level of $14,000; that is, only when $14,000 in Partnership subscriptions is received will the Partnership be formed and commence business. Each investor must subscribe for (purchase) a minimum of two Units of Partnership interest and must pay for the Unit purchased in cash.

*Formation of the Partnership*

The Partnership will be formed pursuant to the Uniform Limited Partnership Act of California and the relations of the Partners will be governed by said Act, the [Agreement of Limited] Partnership (Exhibit A hereto) and such other laws as may be applicable.

The fiscal year of the Partnership will be the calendar year. The Partnership will terminate approximately seven years following the date of its formation unless terminated sooner pursuant to the provisions of the Agreement of Limited Partnership.

\* \* \* \* \* \* \*

### HOW TO SUBSCRIBE FOR PARTNERSHIP UNITS

\* \* \* \* \* \* \*

The General Partner reserves the right to reject the tender of any application for any reason whatsoever. Pending formation of the Partnership, or addition of new Limited Partners after formation of the Partnership, subscription funds for the Units will be placed in a custodial bank account.

No subscription will be held for longer than the date of termination of this Offering. No Units or Partnership interest will be sold if less than fourteen (14) Units are subscribed for. If an insufficient amount of funds is received, each subscriber will receive a prompt refund of the subscription funds paid by him, and all obligations under his subscription will be immediately terminated.

The minimum investment in ACTF was $2,000, representing two partnership units. Fifty-six units were offered.

(i) the offering amount was increased from 42 units and $42,000 to 56 units and $56,000;

(ii) the date of the offering was changed from November 1, 1982 to October 15, 1982; and

(iii) the typed year on the form Agreement of Limited Partnership and the form Subscription Agreement (Exhibits A and B to the Memorandum) was changed from 1982 to 1983.

The subscription agreement required Bryant to accept a subscription within 30 days of its receipt. During November and December 1982, Bryant received and accepted executed subscription agreements from 19 partners, including him-self, for all 56 offered partnership units.[4] Pursuant to the subscription agreement, a subscriber appointed Bryant as attorney-in-fact to execute the partnership agreement and other specified documents. The subscription agreement further provided that the subscriber intended that his signature on that agreement "also constitute his signature to the Partnership Agreement." Thus, by signing the subscription agreement, a subscriber whose subscription was accepted also signed the agreement of limited partnership. The pro forma partnership agreement provided with the subscription agreement was dated "as of the _____ day of _____ , 1982." With each subscription agreement, Bryant received full payment of each partner's capital contribution. He deposited the checks directly into the ACTF's bank account. There were no refunds of any subscription payments because more than 14 units were subscribed by the end of 1982 and because no subscriptions were rejected.

Petitioners executed a subscription agreement to purchase two partnership units on December 4, 1982. The subscription agreement, together with a check for $2,000, was delivered to Bryant, who accepted petitioners' subscription on December 7, 1982.

ACTF is in the business of selling and leasing audio cassette tapes made from leased master tapes. ACTF's business assets consist of four master audio cassette tapes leased from Entertainment Marketing Co. Inc. (EMCI) in December 1982. On behalf of ACTF, Bryant entered into the lease agreements with EMCI and issued four checks drawn on ACTF's account for $11,500, each, in December 1982. These payments represented prepaid rent for the term of each lease.

On March 15, 1983, Bryant filed a Partnership Information Return, Form 1065, on behalf of ACTF for the year

[4] Petitioners have submitted 14 subscription agreements representing 39 partnership units purchased by 15 limited partners. Bryant was unable to locate the subscription agreements representing the remaining 17 units.

ended December 31, 1982. ACTF files its partnership return on a calendar year basis. The return stated that ACTF commenced business as a limited partnership on November 30, 1982. Bryant also prepared a Form K-1 for each partner for the taxable year 1982.[5]

The confidential private placement memorandum for ACTF, together with unsigned copies of the agreement of limited partnership and the subscription agreement, was recorded in the County of Sonoma, State of California, on April 7, 1983. The agreement of limited partnership provides, in relevant part,

## ARTICLE I

### DEFINITIONS

1.16 "Partnership" means the limited partnership created by this Agreement.

\*     \*     \*     \*     \*     \*     \*

## ARTICLE II

### THE LIMITED PARTNERSHIP

2.2 PARTNERSHIP NAME AND CERTIFICATE. The name of the Partnership is Audio Cassette Teaching Fund and the Partnership shall conduct business under such name. The General Partner in his sole discretion may change the name at any time and from time to time. The General Partner and the Limited Partners hereto shall promptly execute, and the General Partner shall record with the county recorder in the county in which the Partnership has its principal office, a Certificate of Limited Partnership (the "Certificate") embodying the principal terms of this Agreement in accordance with the Uniform Limited Partnership Act of the State of California.

\*     \*     \*     \*     \*     \*     \*

2.5 TERM OF PARTNERSHIP. The Partnership shall commence on the date on which the Certificate has been recorded in accordance with the provisions of the Uniform Limited Partnership Act of the State of California and shall continue for a period of seven (7) years, unless it is sooner dissolved or terminated pursuant to the provisions of this Agreement.[6]

---

[5] The Forms K-1 are not in the record.

[6] Bryant never recorded a "Certificate of Limited Partnership." The private placement memorandum, limited partnership agreement, and subscription agreement, however, disclosed substantially all of the information statutorily required on the certificate of limited partnership. See Cal. Corp. Code sec. 15502 (West 1977). The California Uniform Limited Partnership Act requires only "substantial compliance in good faith" with recording formalities. Cal. Corp. Code sec. 15502(2) (West 1977). We are concerned only with whether the

In his notice of deficiency dated April 9, 1986, respondent disallowed all deductions and credits arising from petitioners' interest in ACTF. Petitioners filed their petition with this Court out of time on October 27, 1986. Respondent filed his motion to dismiss on the ground that the petition was not timely filed on January 5, 1987. On January 30, 1987, petitioners filed their notice of objection to respondent's motion to dismiss for lack of jurisdiction and cross-motion to dismiss for lack of jurisdiction on the ground that no valid statutory notice of deficiency was issued. Respondent filed his notice of objection to petitioners' cross-motion to dismiss for lack of jurisdiction on March 2, 1987, and petitioners' filed a supplemental memorandum in support of their cross-motion to dismiss on March 16, 1987.

## OPINION

We must decide whether ACTF was a partnership for Federal income tax purposes prior to 1983. If it was, and if it had a 1982 taxable year beginning after September 3, 1982, then we must grant petitioners' cross-motion to dismiss for lack of jurisdiction because respondent has not complied with the partnership audit and litigation procedures (sec. 6221 et seq.), and the notice of deficiency would be invalid. *Maxwell v. Commissioner*, 87 T.C. 783 (1986); sec. 301.6221-1T(a), Temp. Proced. & Admin. Regs., 52 Fed. Reg. 6781 (Mar. 5, 1987). If, on the other hand, ACTF was formed in 1983, or if the partnership had no 1982 taxable year, then the partnership audit and litigation procedures would not apply, and we must grant respondent's motion to dismiss for lack of jurisdiction because the statutory notice would be valid, and the petition was not timely filed.[7]

A partnership, for Federal tax purposes, includes a "syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title [subtitle], a

partnership was formed for Federal tax purposes in 1982 and thus need not decide whether a limited partnership was properly formed under California law in 1983.

[7] We always have jurisdiction to determine our jurisdiction. E.g., *Pyo v. Commissioner*, 83 T.C. 626 (1984).

corporation or a trust or estate." Sec. 761(a); sec. 7701(a)(2). A partnership is formed when the parties to a venture join together with the intent of conducting, presently, a business enterprise. *Sparks v. Commissioner*, 87 T.C. 1279, 1282 (1986); see *Commissioner v. Culbertson*, 337 U.S. 733, 742 (1949); *Commissioner v. Tower*, 327 U.S. 280, 287-288 (1946). The existence or nonexistence of a partnership under State law is not determinative for Federal tax purposes. See *Commissioner v. Tower, supra* at 287-288; *Hensel Phelps Construction Co. v. Commissioner*, 74 T.C. 939, 947 (1980), affd. 703 F.2d 485 (10th Cir. 1983).

Respondent argues that no partnership existed until at least April 7, 1983, when Bryant recorded the confidential private placement memorandum with the State of California. Respondent characterizes Bryant's actions as general partner prior to April 7, 1983, as "pre-operating" activities. See *Sparks v. Commissioner*, 87 T.C. at 1284.[8] Petitioners contend that though ACTF may not have been a California limited partnership until 1983, it was a partnership within the meaning of section 761(a) in December 1982. We agree with petitioners.

In *Sparks v. Commissioner, supra,* the general partner had incurred expenses, commenced negotiations with third parties, and obtained some subscriptions prior to September 3, 1982. The offering was not closed, however, until December 1982, and the partnership documents stated that the partnership would be formed and the interests of the partners would vest only on completion of the offering. Until the offering was closed in December 1982, all subscription money received was kept in an escrow account and was not available for use by the partnership. We characterized the general partner's activities prior to the completion of the offering as pre-operating activities. We held that the partnership, being formed after September 3, 1982, was thus subject to the partnership audit and litigation procedures (sec. 6221 et seq.), for its taxable year ending December 31, 1982.

In the instant case, by December 31, 1982, Bryant's activities as general partner were more than pre-operating

---

[8] See also *L&B Land Lease v. Commissioner*, T.C. Memo. 1987-264 (filed concurrently with instant opinion).

activities, and the partners' capital interests in ACTF had vested. Although ACTF reported no income on its 1982 partnership return, by the end of 1982 ACTF was fully subscribed, all contributed capital had been deposited in ACTF's operating account, and the capital had been employed in ACTF's business. Bryant entered into four lease agreements with EMCI in December 1982 to acquire four master audio cassette tapes, ACTF's business assets, and prepaid the rent for the full term of each lease. These actions sufficiently implement the subscribers' intent in executing the subscription agreement with the attached pro forma partnership agreement to form a partnership in 1982.

The recorded agreement of limited partnership does not require a different result. The agreement is dated 1983 and provides that the "General Partner shall record with the county recorder in the county in which the Partnership has its principal office, a Certificate of Limited Partnership" and that the "Partnership shall commence on the date on which the Certificate has been recorded." "Partnership," for purposes of the agreement of limited partnership, however, means a limited partnership formed under California law. Although ACTF was not a California limited partnership in 1982 because it had not yet complied with the statutory recording requirements (Cal. Corp. Code sec. 15502 (West 1977)), it was a partnership for Federal tax purposes.[9]

Moreover, before the end of 1982, the partners had joined together with the present intent of conducting a business enterprise. *Torres v. Commissioner*, 88 T.C. 702 (1987); *Sparks v. Commissioner*, 87 T.C. at 1282. ACTF had acquired all of its business assets by December 31, 1982, and was an unincorporated organization through which a business, financial operation, or venture was carried on. Consequently, its first taxable year began in December 1982.

---

[9]ACTF may also have been a general partnership under California law in 1982. Under California law, a general partnership is "an association of two or more persons to carry on as co-owners a business for profit." Cal. Corp. Code sec. 15006(1) (West 1977). This definition is narrower than the definition of a partnership for Federal tax purposes. See sec. 761(a), sec. 7701(a)(2). We do not decide whether ACTF was a partnership under California law in 1982 because the existence of a partnership under State law is not determinative for Federal tax purposes. See *Commissioner v. Tower*, 327 U.S. 280, 287-288 (1946); *Hensel Phelps Construction Co. v. Commissioner*, 74 T.C. 939, 947 (1980), affd. 703 F.2d 485 (10th Cir. 1983).

In addition, Bryant filed a partnership return, Form 1065, for the taxable year 1982 which stated that ACTF had commenced business on November 30, 1982, and issued Forms K-1 to the partners. This fact alone suggests the applicability of the partnership audit and litigation provisions pursuant to section 6233(a).[10] Respondent's regulations provide as follows:

> [With an exception not relevant], the provisions of subchapter C of chapter 63 of the Code [(the partnership audit and litigation provisions)] and the regulations thereunder shall apply with respect to any taxable year of an entity for which such entity files a partnership return as well as to such entity's items for that taxable year and to any person holding an interest in such entity at any time during that taxable year. [Sec. 301.6233-1T(a), Temp. Proceed. & Admin. Regs., 52 Fed. Reg. 6779 (Mar. 5, 1987).]

Section 6233 is inapplicable in this case because we have found that ACTF was a partnership in December 1982. Even if there were evidence (and none has been offered) indicating that ACTF's leasing activities never began, however, this case would be subject to the partnership audit and litigation provisions because ACTF filed a partnership return for 1982. Sec. 6233(a); sec. 301.6233-1T(a), Temp. Proceed. & Admin. Regs., 52 Fed. Reg. 6759 (Mar. 5, 1987). Respondent accepted ACTF's partnership return. He has offered no rationale for ignoring section 6233(a).

As a partnership formed after September 3, 1982, with its fiscal year ending December 31, 1982, ACTF was subject to the partnership audit and litigation procedures (sec. 6221 et seq.), for its 1982 taxable year. Respondent's statutory notice of deficiency is, therefore, invalid. Petitioners' cross-motion to dismiss for lack of jurisdiction will be granted. Respondent's motion to dismiss for lack of jurisdiction will be denied.

Accordingly,

*An appropriate order will be entered.*

---

[10]SEC. 6233. EXTENSION TO ENTITIES FILING PARTNERSHIP RETURNS, ETC.

(a) GENERAL RULE.—If a partnership return is filed by an entity for a taxable year but it is determined that the entity is not a partnership for such year, then, to the extent provided in regulations, the provisions of this subchapter are hereby extended in respect of such year to such entity and its items and to persons holding an interest in such entity.