ALPHA CHEMICAL PARTNERS, LESTER LIEBERMAN AND FAITH LIEBERMAN, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alpha Chem. Partners v. Commissioner
Docket No. 23188-91
United States Tax Court
T.C. Memo 1995-141; 1995 Tax Ct. Memo LEXIS 135; 69 T.C.M. (CCH) 2292; March 30, 1995, Filed *135 An order will be issued denying petitioners' motion for leave to file the motion to vacate decision. For petitioners: Thomas R. Moore. For respondent: Francis Chan. DAWSON, PAJAK DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge John J. Pajak pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. All section references are to the Internal Revenue Code in effect at the time the petition was filed. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: This case is presently before the Court on petitioners' Motion for Leave to File a Motion to Vacate Decision (Motion for Leave). We have combined the findings of fact and opinion for clarity and convenience. Some of the facts in this case have been stipulated and are so found. The partnership, Alpha Chemical Partners, had its principal place of business in New York, New York, when the petition was filed herein. On November 10, 1992, the Court entered a *136 decision in this case pursuant to the agreement of the parties. Two hundred and nineteen days later, on June 17, 1993, petitioners filed their Motion for Leave and lodged a Motion to Vacate Decision. The Motion for Leave alleges that the decision should be vacated based on the ground of mutual mistake of fact. A decision of the Tax Court generally becomes final 90 days after the decision is entered, at which time we may no longer vacate or revise the decision, except under limited circumstances. Manchester Group v. Commissioner, T.C. Memo. 1994-604. Petitioners' Motion for Leave was received and filed by the Court more than 90 days after the decision was entered. There is no question that this Court can proceed in a case only if it has jurisdiction, and that either party, or the Court sua sponte, can question jurisdiction at any time. Estate of Young v. Commissioner, 81 T.C. 879, 880 (1983). As we stated in Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 179 (1960), "questions of jurisdiction are fundamental and whenever it appears that this Court may not have jurisdiction *137 to entertain the proceeding that question must be decided." We have jurisdiction to determine jurisdiction. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1002 (1978). Accordingly, we have jurisdiction to consider petitioners' Motion for Leave. This proceeding turns principally on the fact that for partnership taxable years beginning after September 3, 1982, Congress enacted the partnership audit and litigation provisions set forth in sections 6221-6231. Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648. On May 13, 1991, respondent sent a notice of final partnership administrative adjustment (FPAA) to petitioners. In the FPAA, respondent determined adjustments to Alpha Chemical Partners (Alpha) for its tax year ended December 31, 1982. Benjamin Lewis (Mr. Lewis) was petitioners' counsel during all pertinent times at least until the entry of the decision in this case, but he was not counsel with respect to the subsequent Motion for Leave and related actions. Edward C. Levine (Tax Matters Partner) was the tax matters partner of Alpha at all relevant times. Mr. Levine was also the President *138 of LGA Management Corp., one of the two managing general partners of Alpha. Petitioners' petition requested a redetermination of the adjustments made to partnership income in the FPAA. The petition also alleged that Alpha is not subject to the TEFRA partnership rules. The petition stated that "petitioner herein is a notice partner and holds or represents more than a 5-percent interest in the partnership within the meaning of section 6226(b)(1)." The petition also listed the current address of the Tax Matters Partner and stated that petitioners did not believe that the Tax Matters Partner filed a petition with this Court within the 90-day period authorized under section 6226(a). On May 5, 1992, each petitioner personally signed a Form 906, Closing Agreement On Final Determination Covering Specific Matters (Closing Agreement) with respect to the investment in Alpha. In the Closing Agreement the parties basically agreed that all deductions claimed from the interest in Alpha were not allowable, that no additional interest under section 6621(c) or any penalties or additions to tax under any other section of the Code would be imposed, and that petitioners were allowed a deduction of *139 20 percent of their actual cash investment. Lester Lieberman (petitioner) made an actual cash investment of $ 56,000. Petitioners agreed to a deduction of $ 11,200. Petitioner's share of the claimed loss as shown on the partnership Schedule K-1 was $ 181,124. Insofar as petitioners are concerned, the Closing Agreement provisions were reflected in the stipulated decision submitted to the Court. On November 10, 1992, the Court entered a decision pursuant to the agreement of the Tax Matters Partner and respondent as set forth in the stipulated decision with respect to petitioners and certain Alpha partners. Although the only signatures required to be on the stipulated decision pursuant to Rule 248(a) were those of the Tax Matters Partner and respondent's counsel, Mr. Lewis, petitioners' then counsel, also signed the stipulated decision. It is clear that Mr. Lewis represented petitioners as counsel when he signed the stipulated decision. See Rule 33(b). On June 17, 1993, long after the decision was entered and had become final, Thomas R. Moore, petitioners' present counsel, filed the Motion for Leave and lodged the Motion To Vacate Decision. Proceedings in this Court are to *140 be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Court may prescribe. Sec. 7453. Pursuant to the authorization of section 7453, "we have over many years developed a comprehensive set of Rules which are designed and calculated to increase our efficiency in adjudicating genuine tax disputes." Blum v. Commissioner, 86 T.C. 1128, 1131 (1986). Rule 162, one of the rules that applies to posttrial proceedings, provides that "Any motion to vacate or revise a decision, with or without a new or further trial, shall be filed within 30 days after the decision has been entered, unless the Court shall otherwise permit." Because petitioners did not file a motion to vacate or revise within 30 days after the decision was entered, they were required to file a motion for leave to file a motion to vacate or revise the decision. Rule 162; Manchester Group v. Commissioner, T.C. Memo. 1994-604. Or, as the Court of Appeals for the Eighth Circuit stated in Heim v. Commissioner, 872 F.2d 245, 246 (8th Cir. 1989): "Tax Court Rule 162 provides that a motion *141 to vacate a decision filed more than 30 days after it was entered must be by special leave of the court." Neither the Rules nor the Internal Revenue Code limits the period in which a motion for leave can be filed with the Court. Manchester Group v. Commissioner, supra. However, except under limited circumstances, this Court lacks jurisdiction to vacate or revise a decision once it becomes final within the meaning of section 7481. Abatti v. Commissioner, 859 F.2d 115, 117-118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986). A decision of this Court becomes final pursuant to a series of detailed rules set forth in section 7481. As relevant here, a decision becomes final "Upon the expiration of the time allowed for filing a notice of appeal, if no such notice has been duly filed within such time". Sec. 7481(a)(1). Under section 7483, a notice of appeal may be filed within 90 days after a decision is entered. The tax matters partner, a notice partner, or a 5-percent group may seek review of a Tax Court decision under section 6226(g). No party filed an appeal of the decision within the time *142 prescribed by section 7483. Pursuant to Rule 13(a) of the Federal Rules of Appellate Procedure, the running of the time for appeal is terminated by a timely motion to vacate filed under Rule 162. Manchester Group v. Commissioner, supra. Here the decision was entered on November 10, 1992. Therefore, unless the running of the time for appeal was terminated pursuant to Rule 13(a) of the Federal Rules of Appellate Procedure by filing a timely motion to vacate, the decision became final on February 8, 1993, 90 days after the decision was entered. A party may file a motion for leave after a decision has become final. Rule 162; Manchester Group v. Commissioner, supra. Once a decision has become final, the Court may grant such a motion only to consider: (a) Whether the Court had jurisdiction over the subject matter or the parties in the first instance, Billingsley v. Commissioner, 868 F.2d 1081 (9th Cir. 1989); or (b) whether the decision entered was the result of fraud on the Court, Abatti v. Commissioner, supra; Toscano v. Commissioner, 441 F.2d 930 (9th Cir. 1971), *143 vacating 52 T.C. 295 (1969); or, in some circuits, (c) whether the decision entered was the result of mutual mistake of fact, Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955); La Floridienne J. Buttgenbach & Co. v. Commissioner, 63 F.2d 630 (5th Cir. 1933). Petitioners' Motion for Leave is based on the ground of alleged mutual mistake of fact. Petitioners contend that the belief of the parties that TEFRA applied to Alpha was a mistake of fact. Initially, we note that there was a unilateral mistake, if any, in this case, and respondent acted in accord with the known facts. We consider petitioners' claim to include whether the Court had jurisdiction over the subject matter or the parties in the first place. Petitioners also raised an argument with respect to the statute of limitations. An issue based on the statute of limitations is a defense in bar and not a plea to the jurisdiction of this Court. Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562 (1989); Badger Materials, Inc. v. Commissioner, 40 T.C. 1061 (1963). *144 That issue does not come within the specific situations in which we may consider a motion for leave. Alpha was organized in the State of New York on May 7, 1982. A Certificate of Limited Partnership of Alpha was filed on May 7, 1982, in which LGA Management Corp. and Stanley Wilson were named as the General Partners and Colman Abbe was named as the Original Limited Partner. The Certificate of Limited Partnership stated that The Original Limited Partner has contributed $ 100 to the capital of the Partnership. Every other Limited Partner admitted to the Partnership, with the consent of LGA Management Corporation, shall contribute $ 97,000 for each unit of limited partnership interest in the Partnership obtained by him, her, or it on or prior to December 1, 1982.
The Certificate of Limited Partnership also stated that Upon the execution and delivery of the Limited Partnership Agreement by the other Limited Partners, the Original Limited Partner shall withdraw from the Partnership and his $ 100 contribution shall be returned to him without interest in complete liquidation of his interest in the Partnership.
The Offering Memorandum, dated June 18, 1982, provided *145 for the purchase of 35 units of participation at $ 97,000 per unit for a total of $ 3,395,000 in cash and subscriber notes. At the time of subscription, $ 28,000 was to be paid in cash or by check. The balance of $ 69,000 was to be evidenced by a recourse promissory note payable on demand but in any event not later than December 1, 1982. Subscription of "all 35 units", or a total of $ 3,395,000 in cash and subscriber notes, was required by August 31, 1982, unless the offering was extended by the general partners. The Offering Memorandum further stated that All subscription payments will be held in escrow for the account of the Partnership pending completion of the Offering. If subscriptions for all 35 Units, aggregating $ 3,395,000 (in cash and principal amount of Subscriber Notes), have not been received by LGA prior to the expiration of the Offering, all subscription payments will be refunded promptly without interest and all subscription documents will be cancelled promptly and returned to subscribers.
The Offering Memorandum stated that "The Partnership is in its formative stage and has not commenced any business operations." The Offering Memorandum expressly stated *146 that "The Partnership will not commence business until it receives subscription payments for Units aggregating $ 3,395,000 in cash and Subscriber Notes." Petitioner agreed to purchase two partnership units and executed a Subscription Agreement on October 13, 1982. Inasmuch as petitioner's subscription for more than a 5-percent interest in the partnership was made after August 31, 1982, it is obvious that the offering was extended by the general partners. The parties stipulated that Alpha's bank statement from Chemical Bank for the period October 15 through October 29, 1982, shows the deposits of the contributions by partners. On October 15, 1982, Alpha deposited $ 300 of the partners' contributions into that account. On October 20 and October 28, 1982, Alpha deposited $ 773,000 and $ 151,000, respectively, of the partners' contributions into its bank account. On October 26, 1982, Alpha entered into a Research and Development Agreement with Scientific Research Limited (Limited). That agreement recited that Limited had been informed that Alpha would attempt to raise $ 3,395,000 in cash and notes in accordance with the Offering Memorandum. The agreement was conditional upon Alpha *147 receiving the $ 3,395,000 by December 15, 1982. On December 1, 1982, Alpha entered into a Technology Assignment Agreement. On November 23, 1982, an Amendment of Certificate of Limited Partnership of Alpha was filed (Amendment of Certificate). The Amendment of Certificate deleted Colman Abbe as the Original Limited Partner and added the limited partners, including petitioner. There were 39 limited partners holding 35 units at $ 97,000 each for a total of $ 3,395,000. Laventhol & Horwath, Certified Public Accountants, stated in a March 15, 1983, report that they made a "review" of Alpha's statements of loss, partners' equity, and changes in financial position from "May 3, 1982 (inception) to December 31, 1982." The accountants' report stated that a review consists principally of inquiries of company personnel and analytical procedures applied to financial data. Accordingly, no opinion was expressed by the accountants regarding the financial statement taken as a whole. The notes to the financial statement stated that Alpha "was organized and commenced operations on May 3, 1982 as a limited partnership under the laws of the State of New York." This latter statement is the principal *148 support for petitioners' contention that Alpha was not a TEFRA partnership. Alpha's 1982 Form 1065, U.S. Partnership Return of Income, was filed timely on or before April 15, 1983. The return covered the period beginning October 20, 1982 and ending December 31, 1982. On the return, the Alpha general partners reported under penalties of perjury that business commenced on October 20, 1982. We observe that the petition contains inconsistent allegations. Some allegations indicate that petitioners believed Alpha was a TEFRA partnership. They initially requested a redetermination of the adjustments to partnership income in the FPAA. However, the petition also stated that Alpha "was formed in or about May of 1982," and raised the issue as to whether Alpha was subject to the partnership procedural rules under TEFRA. The key issue is the date on which Alpha was formed. The issue of when a partnership was formed has been addressed several times by this Court. Peters v. Commissioner, 89 T.C. 423, 436 (1987); Frazell v. Commissioner, 88 T.C. 1405, 1412-1413 (1987); Sparks v. Commissioner, 87 T.C. 1279, 1282-1283 (1986). *149 A partnership's first tax year commences on the date the partnership is formed. Sparks v. Commissioner, supra at 1282. The date a partnership is formed for Federal tax purposes is determined under Federal tax laws, not State law. Frazell v. Commissioner, supra at 1412. For Federal tax purposes, a partnership is formed when the parties to a venture join together capital or services with the intent of conducting presently an enterprise or business. Id. at 1412; Sparks v. Commissioner, supra at 1282. We consider all the facts and circumstances in making this decision. In Sparks v. Commissioner, supra, the general partner incurred expenses, commenced negotiations with third parties, and obtained some subscriptions prior to September 4, 1982. The offering was not closed until December 1982, and the partnership documents stated that the partnership would be formed and capital interests of the partners would vest only upon completion of the offering. Until the offering was closed in December 1982, all subscription *150 money received was kept in an escrow account and was not available for use by the partnership. We stated that the solicitation of capital from prospective partners does not create a partnership, and we characterized the general partner's activities before the completion of the offering as pre-operating activities. Id. at 1283-1284. This case is like the Sparks case. Petitioners did not show that anything more than preoperating activities took place before September 4, 1982. The record shows that no moneys were deposited in Alpha's bank account until October 15, 1982. All units were not subscribed before September 4, 1982, and therefore the Offering Memorandum could have been canceled after September 3, 1982. The Offering Memorandum stated that Alpha would not commence business until it received subscription payments for units aggregating $ 3,395,000 in cash and notes. Until completion of this Offering pursuant to its terms, all subscription money received was kept in escrow and was subject to refund if all the subscriptions were not received prior to the expiration of the Offering. The Research and Development Agreement was entered into *151 on October 26, 1982. The Technology Assignment Agreement was entered into on December 1, 1982. The Amendment of Certificate of Partnership was executed on November 18, 1982. By that date, limited partners had purchased 35 units totaling $ 3,395,000. At that time, in accordance with the Certificate of Partnership, Mr. Abbe was deleted as the Original Limited Partner. As previously stated, the actions of those involved with Alpha indicate that there was no mistake as to whether TEFRA applied to Alpha. The partnership return, which was signed under penalties of perjury, covered the period beginning October 20, 1982, and ending December 31, 1982. The partnership return stated that business commenced October 20, 1982. The petition describes petitioner "as a notice partner who holds or represents more than a five percent (5%) interest in the partnership within the meaning of Section 6226(b)(1)." Significantly, the Tax Matters Partner signed the stipulated decision that settled the 1982 Alpha TEFRA issues for petitioner and other partners. Mr. Lewis also signed the stipulated decision which reflects the earlier Closing Agreement signed by petitioners. Clearly the parties understood *152 that TEFRA applied to Alpha and to petitioners, and that there was no mistake of fact. Petitioners allege, without any evidence, that Mr. Lewis was ill and in no condition to sign the stipulated decision. The short answer is that Mr. Lewis was merely ratifying what petitioners individually had conceded in the Closing Agreement settling the 1982 Alpha TEFRA issues. Furthermore, as the Supreme Court explained in Link v. Wabash Railroad Co., 370 U.S. 626, 633-634 (1962), a party such as petitioner: voluntarily chose * * * [his] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.
The parties settled this case with respect to the issues regarding Alpha. The Court received a stipulated decision signed by the Tax Matters Partner, Mr. Lewis, then petitioners' counsel, and respondent prior to November 10, 1992, which shows the parties' agreement as to the partnership items of Alpha for 1982 as follows: Partnership Item
1982 As Reported
As Determined
Research and development
$ 3,100,000 -0-  Guaranteed payments
100,000 -0-  Legal and professional
30,178 -0-  Consulting fees
3,906 -0-  Bank charges
134 -0-  Amortization
146 -0-  Miscellaneous partnership
-0-
$ 30,000
item deduction for
verified cash investments
*153 Each of the partners listed was allowed a deduction for his verified cash investment as follows: Partner  Amount
Eli Ehrlich
$ 11,200
Leonard C. Greenebaum
2,000
Edward C. Levine
5,600
Lester Lieberman
11,200
Total
30,000
In any event, we find that petitioners individually have tied their own hands in this case. In the Closing Agreement with regard to Alpha, the parties state that they: desire to settle their dispute without trial of any issues of fact or law, and to enter into this Closing Agreement to dispose of their pending tax dispute.
Section 7121(a) authorizes the Commissioner to enter into closing agreements with taxpayers in respect of any tax for any taxable period. Section 7121(b) provides that: "such agreement shall be final and conclusive * * * except upon a showing of fraud or malfeasance, or misrepresentation of a material fact". The party seeking to set aside a closing agreement bears the burden of proving fraud or malfeasance, or misrepresentation. Brinkman v. Commissioner, T.C. Memo. 1989-217. Petitioners presented no evidence and did not argue that there was fraud or malfeasance, or misrepresentation. *154 Section 7121 does not provide for an exclusion for mistake. Estate of Salinitro v. Commissioner, T.C. Memo. 1992-274; Brinkman v. Commissioner, supra. We find that petitioners are bound by the Closing Agreement. It was entered into more than 6 months before the decision in this case, and contains the same tax result for petitioners as that in the stipulated decision. We find that the parties involved in Alpha did not join together capital or services with the intent to conduct a partnership enterprise until after September 3, 1982. Frazell v. Commissioner, 88 T.C. at 1412; Sparks v. Commissioner, 87 T.C. at 1282. Thus, on this record, we hold that Alpha was a partnership formed after September 3, 1982, and that it was subject to the partnership audit and litigation procedures of sections 6621-6631. We further hold that respondent's FPAA was valid. We have considered petitioners' other arguments and find that these arguments are without merit. Accordingly, we hold that there is no ground on which the Motion for Leave should be granted. Therefore, *155 we will deny that motion. An order will be issued denying petitioners' motion for leave to file the motion to vacate decision.