T.C. Memo. 2000-266


UNITED STATES TAX COURT


LESTER L. AND SUSAN P. SAMFORD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13597-91.                    Filed August 24, 2000.


<u>Thomas E. Redding</u>, for petitioners.

<u>Robert E. Marum</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, <u>Special Trial Judge</u>:  This case is before the Court
on petitioners' motion to dismiss for lack of jurisdiction.
Petitioners are part of a group of investors in a partnership,
Summer Lovers Associates (SLA).  Six other partners, who have
petitions pending in this Court, have also filed motions to
dismiss.  In those six cases the petitioners have agreed that
this case will serve as the test case as to the motions to
dismiss.  This case was submitted fully stipulated under Rule

122. Neither party has requested a further evidentiary hearing.

Petitioners claimed a pass-through loss and an investment credit from SLA on their 1982 Federal income tax return. Respondent disallowed the loss and credit and determined a deficiency in petitioners' 1982 Federal income tax and additions to tax under sections 6653(a)(1) and 6659[1] in the respective amounts of $27,552, $1,377.60, and $8,265.60.  Respondent also determined that petitioners are liable for an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on the deficiency and that the increased interest provisions of section 6621(c) applied.  Assuming that the adjustments pertaining to SLA are properly before this Court in this proceeding, petitioners and respondent have reached an agreement as to the deficiency and additions to tax.  The issue remaining is whether respondent's adjustments to the loss and credit from SLA and the additions to tax resulting therefrom are properly before the Court in this proceeding.  If SLA was formed prior to September 4, 1982, it is not subject to the partnership procedural provisions enacted as sections 6221 through 6231 by section 402(a) of the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 648, and respondent's adjustments are properly before the Court in this proceeding.  On

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue.

the other hand, if SLA was formed on or after September 4, 1982, respondent's adjustments are not properly before the Court in this proceeding.

FINDINGS OF FACT

The facts may be summarized as follows.

A.  The Basic Partnership Documents

A Certificate of Limited Partnership was filed with the State of New York on July 28, 1981, under the name Greenberg Brothers Partnership #8.[2]  The partnership was formed "to engage in the general business of owning and dealing in all respects with motion picture films to be acquired by the Partnership." Richard M. Greenberg and A. Frederick Greenberg were listed as the general partners.  A. Frederick Greenberg was also listed as a limited partner.  The general partners had "the right to admit additional Limited Partners."

SLA issued a Private Placement Memorandum (the Memorandum) on May 18, 1982, for units of SLA.  The Memorandum states that the partnership was "formed" on July 28, 1981, and that the original partnership agreement would be amended.  The Memorandum further states that SLA intended to purchase the worldwide rights to the motion picture "Summer Lovers" from Filmways, Inc. (Filmways).  The purchase price of the film was $6,600,000,

---

[2]  Greenberg Brothers Partnership #8 later became known as SLA.

consisting of a $6,540,000 promissory note and $60,000 in cash. The closing of the offering was conditioned on SLA purchasing the film and entering into a distribution agreement.

Under the "amended partnership agreement" (hereinafter the partnership agreement), the "term of the Partnership shall commence upon the recording of the Certificate of Limited Partnership." The partnership agreement stated that SLA would not purchase the film unless subscriptions of $2,500,000 had been accepted. If the capital contributions of the limited partners were less than the total subscription amount, the general partner could accept contributions from other persons, "and such persons shall be admitted as Limited Partners".

The Subscription Agreement provided that the offering would terminate on the earliest of (1) the date the general partners in their sole discretion determined, or (2) the outside date, July 1, 1982. The general partners had the authority to extend the outside date to August 5, 1982. Under that agreement the limited partners, however, could waive any of the conditions in that agreement or in the Memorandum.

On July 30, 1982, SLA filed a Certificate of Amendment of Certificate of Limited Partnership with the State of New York. The certificate listed the limited partners of SLA and the amount of their contributions. The certificate indicated that all 50 units had been purchased and listed contributions totaling

$2,500,000.  On September 2, 1982, SLA filed another Certificate of Amendment of Certificate of Limited Partnership with the State of New York.  The second amended certificate listed the limited partners and contributions totaling $2,500,000.

B.  The Film "Summer Lovers"

SLA and Filmways executed a Purchase Agreement and a Distribution Agreement for the film, Summer Lovers, on April 15, 1982.  In addition, an Assignment of Copyright and a Mortgage of Copyright between SLA and Filmways were executed on April 15, 1982.

An Advertising Services Agreement between SLA and Filmways was also executed on April 15, 1982, and provided for payment by SLA of $1,313,000 to a separate account for payment of third-party invoices for advertising expenses.  Filmways sent Richard M. Greenberg a letter dated July 23, 1982, containing the signature card and letter of authorization, both dated July 19, 1982, for the Summer Lovers Associates Advertising bank account. On January 10, 1983, employees of Orion Pictures Corporation, successor in interest to Filmways, sent an interoffice memo listing invoices and checks totaling $1,313,000 in connection with the Summer Lovers Associates Advertising account.  The invoices totaled $1,313,000 and included invoices for advertising services performed during July and August 1982.  SLA deducted advertising expenses in the amount of $1,313,000 for 1982.

The Bill Of Sale for the movie "Summer Lovers" was executed by Filmways on July 14, 1982. SLA executed a $6,540,000 non-negotiable recourse promissory note to Filmways, and Filmways issued a receipt for $6,540,000 on the same date.

C. Partnership Tax Return

On its 1982 Form 1065, U.S. Partnership Return of Income, SLA reported that its business commenced on January 1, 1982. On Form 4562, Depreciation and Amortization, SLA reported 5-year property (the film) being placed in service on January 1, 1982. The property was reported to have a basis of $6.6 million and SLA took a full year's depreciation deduction in the amount of $990,000.

An opinion letter was issued by the law firm of Goldschmidt, Fredericks & Oshatz as to tax consequences of the formation and operation of SLA. The opinion letter stated, in part, "The General Partners have advised that the Partnership will claim a full year's depreciation for 1982. * * * [t]he Partnership will have been in existence for all of 1982, so that it will have a 12 month taxable year". A report on the projected tax basis and cash-flow was prepared by the accounting firm of Touche Ross & Co. on May 23, 1982. In reviewing the depreciation of the film the report stated, in part, that "The general partners believe that the Partnership has actively been engaged in business from January 1, 1982 through the present."

SLA filed a petition for the 1983 taxable year with this Court in docket No. 27185-91, on November 22, 1991. In the petition SLA stated that "The Film was placed in service by the Partnership during July 1982 at which time it was released in more than 125 motion picture theaters." There is no evidence in this record that contradicts that statement.

D. Petitioners' Interest in SLA

Petitioner, Lester L. Samford, issued a check to SLA for $13,836 on November 29, 1982. Petitioners held a 1.96000 percent interest in SLA. The following documents relating to SLA were signed by petitioners: Purchaser Questionnaire, Subscription Agreement with an attached Annex I dealing with Powers of Attorneys-in-Fact, a Negotiable Promissory Note, a Security Agreement, an Assumption Agreement, and an Alternate Negotiable Promissory Note. The power of attorney provided that the general partners had the power and authority to act for petitioners in the filing of documents required to be filed. All of the above documents were dated and notarized July 22, 1982. Even though these documents were notarized, petitioners claim, and respondent does not dispute, that these documents were actually executed after September 3, 1982.

E. Transactions After September 3, 1982

In the State of Washington, William Bratton and Stephen Roberts (Bratton and Roberts), certified public accountants,

began selling partnership units of SLA in October 1982. All of the investors Bratton and Roberts sold units to made their investments during or after October 1982. The original subscription documents were sent to SLA for the units they sold. After those documents were sent to SLA, the general partners returned them and required that the documents be reexecuted with a July 22, 1982, date. Washington limited partners Bonnie B. Nelson, Herman M. Nirschl, and Dennis W. Neifert each wrote checks to SLA for $13,836 for their partnership interests in December 1982.

SLA did not apply to register the sale of partnership units in the State of Texas until September 21, 1982.

SLA received a promissory note, dated September 23, 1982, payable by a Bob L. Jordan in the amount of $32,000, showing interest accruing from July 15, 1982.

OPINION

Partnership audit and litigation matters are governed by sections 6221 through 6231 enacted by section 402(a) of the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 648, commonly referred to as the TEFRA partnership provisions. Under the TEFRA provisions, a "partnership item" (as defined by section 6231(a)(3)) must be litigated at the partnership level in a partnership proceeding. Secs. 6221, 6226(a); Maxwell v. Commissioner, 87 T.C. 783, 787-

788 (1986). We do not have jurisdiction over a partnership proceeding until a valid notice of final partnership administrative adjustment (FPAA) has been issued and the tax matters or notice partner has timely petitioned this Court for a readjustment of the partnership items. See Rule 240(c); see also Consolidated Cable, Ltd. v. Commissioner, T.C. Memo. 1990-657, affd. without published opinion 995 F.2d 222 (5th Cir. 1993). An "affected item" (as defined by section 6231(a)(5), which includes additions to tax based on partnership items) cannot be determined before the final resolution of the partnership item. GAF Corp. v. Commissioner, 114 T.C. ___, ___ (2000) (slip op. at 13); Maxwell v. Commissioner, supra at 790-791.

Prior to TEFRA, items corresponding to those which TEFRA defines as partnership and affected items were all litigated in a deficiency proceeding under section 6212. See Maxwell v. Commissioner, supra at 787. In this case, respondent did not issue a FPAA for the year at issue in this case; rather respondent issued a notice of deficiency under section 6212. The parties agree that the items set forth in the notice of deficiency would be either partnership or affected items, if the TEFRA partnership provisions apply.

Under section 407(a)(1) of TEFRA, 96 Stat. 670, section 402 "shall apply to partnership taxable years beginning after the date of the enactment of this Act." TEFRA was enacted on

September 3, 1982, and the partnership provisions of TEFRA apply to any partnership taxable year beginning after September 3, 1982. See Wolf v. Commissioner, 4 F.3d 709, 714 (9th Cir. 1993), affg. T.C. Memo. 1991-212. Therefore, we must determine whether SLA was a partnership for Federal income tax purposes prior to September 4, 1982.

Federal law determines when a partnership is formed for tax purposes. See Frazell v. Commissioner, 88 T.C. 1405, 1412 (1987). A partnership's taxable year begins upon the date it is formed. See Sparks v. Commissioner, 87 T.C. 1279, 1282 (1986). A partnership is formed "when the parties to a venture join together capital or services with the intent of conducting presently an enterprise or business." Id. Whether SLA was formed prior to September 4, 1982, is a factual question. See Wolf v. Commissioner, supra.

For our purposes here, we need not decide the exact date that SLA was formed. The question is whether SLA was formed prior to September 4, 1982, and we have no doubt that it was formed prior to that date. The antecedent of SLA was formed in 1981. That partnership metamorphized into SLA with the amended partnership agreement. That agreement provided that the partnership would commence with the filing of the certificate of limited partnership which first was filed on July 30, 1982. On July 14, 1982, SLA purchased the film Summer Lovers and caused

the film to be advertised during July and August 1982.

Petitioners' contention that the partnership was not formed until after September 4, 1982, is based on the fact that some of the limited partners (including petitioners) did not become partners prior to September 4, 1982. Petitioners, however, confuse two different concepts, the formation of the partnership and the time that a limited partner acquired an interest in the partnership. We are concerned here with the question when the partnership was formed.

A partnership is deemed to have been formed on the date which the first parties acquire their capital interest in the partnership. See Sparks v. Commissioner, supra at 1283. That event unquestionably occurred here prior to September 4, 1982. Petitioners rejoin that, under the subscription agreement, if the limited partnership units were not subscribed to by August 5, 1982, all subscriptions would be canceled. But, that provision could be waived by the limited partners. Moreover, the partnership agreement provided that the term of the partnership commenced with the filing of the amended certificate of limited partnership, and that was filed on July 30, 1982. While petitioners characterize some of the limited partners who are listed in the amended certificates of limited partnership filed prior to September 4, 1982, as "conditionally subscribed" partners, there is no evidence that the general partners

falsified the amended certificate and the subsequent certificate filed on September 2, 1982. Furthermore, the partnership agreement provided that the general partners could admit other limited partners. At the time the amended certificate was filed on July 30, 1982, SLA had title to the film, the film had been released, and SLA was actively advertising the film. At least by that time, SLA had been formed.

Petitioners belittle the advertising activities because the checks drawn on the advertising account were not drawn until after September 4, 1982. But, under the advertising agreement, SLA transferred $1,313,000 to the advertising account at the closing of the purchase of the film. Furthermore, most of the invoices paid were for services performed in July and August 1982. We find petitioners' argument at best unconvincing.

Finally, it should be noted that petitioners are attempting to disavow the partnership documents and sworn statements of the general partners on the certificates of limited partnership and the tax return of SLA. Petitioners seem to argue that they should not be bound by these representations of SLA. We disagree. Under general partnership principles one partner is bound by the acts of another. See Friend v. H.A. Friend and Co., 416 F.2d 526, 533 (9th Cir. 1969); Truman v Commissioner, 3 B.T.A. 386, 388 (1926). This is particularly true here where the partnership agreement provided that "management and control * * *

shall rest exclusively with the General Partners."  Furthermore, petitioners executed a power of attorney that provided that the attorney-in-fact shall have the "authority to act in * * * [their] name[s] and on * * * [their] behalf in the * * * filing of * * * [a]ny other instrument which may be required to be filed by the Partnership * * * or by any governmental agency * * *."  Morever, with respect to the date of the formation of the partnership, petitioners' hands are not exactly clean:  They admit that they backdated documents indicating that their interest in the partnership commenced in July 1982, and they claimed tax deductions and credits predicated on that representation at least in part.  In these circumstances, in order to disregard the records of the partnership, we would require a much stronger showing than the innuendo based on innuendo that petitioners argue here.  See Estate of Durkin v. Commissioner, 99 T.C. 561 (1992).

> An appropriate order denying petitioners' Motion to Dismiss for Lack of Jurisdiction will be issued.