L&B LAND LEASE GROUP 82-4, SELMA BLATTMAN, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
L&B Land Lease Group 82-4 v. Commissioner
Docket No. 26354-86.
United States Tax Court
T.C. Memo 1987-264; 1987 Tax Ct. Memo LEXIS 264; 53 T.C.M. (CCH) 902; T.C.M. (RIA) 87264; May 27, 1987. Jerome S. Richman, for the petitioner. David R. Smith, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge*: This case is before the Court on the parties' cross-motions for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.
The Commissioner determined adjustments to the Federal partnership information returns of L&B Land Lease Group 82-4 for the taxable years ended *265 December 31, 1982 and December 31, 1983, as set forth in his Notice of Final Partnership Administrative Adjustments ("FPAA"). The issue this Court must decide is whether L&B Land Lease Group 82-4 ("L&B") is subject to the partnership audit and litigation procedures, section 6221 et seq., [1] for its taxable year ended December 31, 1982. [2] If L&B is not, then respondent was without authority to issue the FPAA. *266 For purposes of this motion all of the facts of this case have been stipulated and are so found. On April 9, 1986, respondent mailed an FPAA to L&B's tax matters partner, Selma Blattman, and to each partner of L&B. Blattman timely filed with this Court a petition for a readjustment of the partnership items on July 7, 1986. L&B is a general partnership formed and operated under the Florida Uniform Partnership Act; the principal office of L&B is at North Miami Beach, Florida. The offering memorandum of L&B, which is not dated, states that a minimum of 40 units and a maximum of 99 units in L&B would be offered. The purchase price of one unit was an immediate cash contribution of $1,200.00 to L&B and a promise to contribute $3,780.00 to L&B on December 31, 1989. By paying two points on December 31, 1989, a partner could extend the due date of his commitment for five years. The offering was to close after all 99 units were purchased but not later than October 31, 1982. The memorandum states that L&B would be formed under the Florida Uniform Partnership Act to be effective as of the date on which the last unit was sold. [3]
*267 The subscription agreement for L&B units states that the subscription is not revocable by the subscriber. However, each subscription was subject to the acceptance of Blattman, L&B's managing general partner. If Blattman rejected a subscription, or if fewer than 40 units of L&B were subscribed for by October 31, 1982, the subscription funds would be returned to the affected subscriber. [4] The agreement states that subscription funds would be held in a "Special Account" until the funds became assets of L&B. Subscription agreements for a total of 70 units of L&B were executed and delivered on or before September 3, 1982. Two partners, viz, Sanford Bacon and Marcia Tompkins, executed and delivered their subscription agreements and contributed the required cash and note after September 3, 1982. The partnership documents reflect that Blattman was the managing general partner of L&B. Blattman also bought the four remaining units of L&B to acquire an interest in L&B as an "Additional General Partner" on September 13, 1982. *268 The Partnership applied for an account with the Merrill Lynch Ready Assets Trust on September 3, 1982. The application was received on September 9, 1982, and the first funds were deposited into the account on September 10, 1982. The first check was drawn on the account on September 13, 1982. The Partnership Agreement of L&B was executed on September 13, 1982 by and among Blattman and each of the 12 "Additional General Partners" of L&B. [5] This agreement states that the term of L&B commenced on the date the agreement was executed. L&B executed an agreement with Eastern Investors Geological Services, Inc. ("EIGS") on September 13, 1982, in which EIGS agreed to provide various services necessary to L&B's proposed business activities. On behalf of L&B, Blattman executed a promissory note in favor of EIGS in the amount of $76,563.90 on September 14, 1982. L&B's Federal partnership information returns filed with respondent for its taxable years ended December 31, 1982 and December 31, 1983 each state that L&B commenced business on September 8, 1982. The partners *269 of L&B have not consented to be subject to the partnership audit and litigation provisions. Petitioner argues that L&B's 1982 taxable year began prior to September 4, 1982 because L&B was formed prior to September 4, 1982. Petitioner believes that L&B was formed prior to September 4, 1982 because more than the minimum offering of 40 units had been subscribed for by that date, and consequently, those subscribers' capital was irrevocably committed to L&B. Therefore, petitioner contends, the partnership audit and litigation procedures, section 6221 et seq., do not apply, and the FPAA is invalid. See Maxwell v. Commissioner,87 T.C. 783, 789 (1986). Respondent argues that L&B was formed after September 3, 1982, its taxable year began after September 3, 1982 and, therefore, the partnership audit and litigation procedures do apply. For the reasons discussed below, we agree with respondent. [6]
*270 In this case L&B's 1982 taxable year, being its first taxable year, commenced not earlier than the date on which it was formed. A determination of the existence of a partnership for Federal tax purposes is governed by Federal, not by state, law. Evans v. Commissioner,447 F.2d 547 (7th Cir. 1971); Frazell v. Commissioner, 88 T.C.     (1987). For Federal tax purposes, a partnership is defined as including "a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title [subtitle], a corporation or a trust or estate." Section 761(a). A partnership is formed when the parties to a venture join together capital or services with the intent of conducting presently an enterprise or business. Commissioner v. Culbertson,337 U.S. 733 (1949); Commissioner v. Tower,327 U.S. 280 (1946); Sparks v. Commissioner,87 T.C. 1279 (1986). In considering all the relevant facts and circumstances, it is the intent of the parties which controls. Commissioner v. Culbertson,supra; *271 Torres v. Commissioner, 88 T.C.     (filed March 30, 1987); Sparks v. Commissioner,supra.The partnership is deemed formed as of the date on which the first parties to the venture acquire a proprietary interest in the capital or profits of the partnership. Hensel Phelps Construction Co. v. Commissioner,74 T.C. 939, 948-949 (1980), affd. 703 F.2d 485 (10th Cir. 1983). Because the minimum subscription amount (40 units) had been sold by September 3, 1982, the subscriptions had become irrevocable by that date. Petitioner argues that Sparks v. Commissioner,supra, requires us to find that L&B was formed on the date the subscriptions were no longer refundable. Petitioner misconstrues Sparks. We held in Sparks that the activities of the promoter on behalf of the partnership prior to December 1982 were "pre-operating activities." As a result, we held that the partnership was formed after September 3, 1982 and, therefore, that its 1982 taxable year commenced after that date. Consequently, the partnership was subject to the partnership audit and litigation provisions. It is clear that one of the *272 important facts on which we based our holding was that the subscriptions were refundable until December 1982. Nevertheless, it does not follow that a partnership is formed for Federal income tax purposes when subscriptions for interests in the partnership become irrevocable. As in Sparks the intent of the partners in L&B must control, and here the record could hardly be clearer as to their intent. The partners intended that L&B be formed as of the date on which the last partnership unit was sold, but not later than October 31, 1982. The L&B offering memorandum so states. The subscription agreement confirms that the funds contributed, though irrevocably committed to the venture by the subscribers, would not be considered as assets of L&B until all units were sold. The offering closed when the last unit was sold, and that occurred on September 13, 1982. The L&B partnership agreement itself states that the term of L&B commenced as of the date the agreement was executed, i.e., September 13, 1982. The services agreement with EIGS was executed on September 13, 1982. No business was conducted by L&B prior to that date. [7] The contributed capital to L&B was deposited into an *273 L&B account on September 10, 1982. We conclude that as expressed in the partnership agreement the parties intended to form L&B on September 13, 1982, notwithstanding that the subscriptions had become irrevocable before September 4, 1982. We reiterate here what we said in Sparks, viz, "The solicitation of capital from prospective partners does not create a partnership." 87 T.C. at 1283. Prior to L&B were pre-operating activities. Compare Frazell v. Commissioner,supra.We conclude that though Blattman obtained most, if not all, [8] of the capital commitments to L&B prior to September 4, 1982, the partners did not intend to form L&B until September 13, 1982. L&B was formed after September 3, 1982. L&B's 1982 taxable year thus commenced after September 3, 1982, and therefore, the FPAA issued to petitioner is valid with respect to petitioner's taxable year 1982. The partnership audit and litigation procedures, section 6221 et seq., apply to this case. We have jurisdiction. Petitioner's cross-motion for partial summary judgment *274 will be denied. Respondent's cross-motion for partial summary judgment will be granted. *275 Accordingly, An appropriate order will be issued.
Footnotes
*. By Order of the Chief Judge, this case was assigned to Judge Williams for decision and opinion.↩
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. ↩
2. The parties in the following cases have stipulated that the facts of their respective cases are identical to those in this case, and have agreed to be bound by the determination of the Court in this case with respect to whether the partnership audit and litigation procedures, section 6221 et seq., apply: L&B Land Lease Group 82-1, Arthur E. Lipson, Tax Matters Partner, docket No. 26350-86; L&B Land Lease Group 82-2, Murray Blattman, Tax Matters Partner, docket No. 26353-86; L&B Land Lease Group 82-3, Rochelle Lipson, Tax Matters Partner, docket No. 26355-86; L&B Land Lease Group 82-5, Richard Lundy, Tax Matters Partner, docket No. 26359-86; and L&B Land Lease Group 82-6, Michele Lundy, Tax Matters Partner, docket No. 26352-86.↩
3. The subscription agreement provides likewise: It is understood and agreed that if this Subscription is accepted by the Managing General Partner and all Units are subscribed and paid for by [October 31, 1982], the funds tendered herewith shall be deposited in an account of the Partnership and shall be considered Partnership assets and payment for the number of Units set forth on the signature page hereof, or such less number as may be allocated to the undersigned by the Managing General Partner. * * *↩
4. Blattman also had the authority to accept only a portion of the subscription. The subscriber would receive a refund of that portion which was not accepted.↩
5. Selma Blattman executed the agreement both as managing general partner and as an "Additional General Partner."↩
6. Respondent also argues that petitioner should be estopped from denying the applicability of section 6221 et seq. Because of our holding we do not reach this issue. Consequently, the Second Stipulation of Facts and attached Exhibits 51-VV through 56-AAA, while relevant to that issue, were not considered in deciding the issue before us.↩
7. The partnership information return states that L&B commenced business on September 8, 1982. That statement is unsupported.↩
8. Petitioner has by affidavit sought to show that all subscriptions were obtained prior to September 4, 1982, though some were not paid until after. Respondent objects to our considering these affidavits. Respondent's objection is improper. Affidavits are suitable for showing that no material fact is in dispute, thus permitting summary judgment proceedings. Respondent should have opposed petitioner's affidavits with his own. See Rule 121, Tax Court Rules of Practice and Procedure.↩ Respondent's objection is moot, however, for the matters asserted in petitioner's affidavits, even assuming they are true, are not material to our ruling on the cross-motions, viz, even if all the subscribers were obligated to purchase units in L&B prior to September 4, 1982, the units were not all sold prior to that date. Three of the twelve partners did not execute and deliver their subscription agreements until after September 3, 1982. Given the intent of the parties as expressed in the offering memorandum, the subscription agreement and the partnership agreement, L&B was formed after September 3, 1982.