T.C. Memo. 1997-95

UNITED STATES TAX COURT

LIFE CARE COMMUNITIES OF AMERICA, LTD., A FLORIDA
LIMITED PARTNERSHIP, ROBERT W. AND JOHANNA McMICHAEL,
PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21683-94.                    Filed February 24, 1997.

<u>Stanley W. Rosenkranz</u>, <u>Leonard L. Kleinman</u>, and <u>Glenn M.
Burton</u>, for petitioners.

<u>Francis C. Mucciolo</u> and <u>Benjamin A. deLuna</u>, for respondent.

MEMORANDUM OPINION

PANUTHOS:  <u>Chief Special Trial Judge</u>:  This matter is before
the Court on two unrelated motions:  (1) Respondent's motion to
dismiss for lack of jurisdiction and to strike allegations set
forth in the petition that Johanna McMichael is entitled to

innocent spouse relief pursuant to section 6013(e);[1] and (2) respondent's motion for partial summary judgment that Robert W. McMichael remained a partner of Life Care Communities of America, Ltd. until June 30, 1990.[2] As explained in greater detail below, we shall grant respondent's motion to dismiss and to strike and deny respondent's motion for partial summary judgment.

Background[3]

During 1981 and 1982, petitioner joined with Raymond Smith (Smith) and Hudson Fowler (Fowler) in organizing several business entities, including a Florida limited partnership known as Life Care Communities of America, Ltd. (Life Care or the partnership), for the purpose of developing, constructing, and owning a retirement center known as Bentley Village. Although initially a limited partner, petitioner became a general partner of Life Care in March 1985.

In July 1985, Smith and Fowler used their combined voting power to remove petitioner from managerial positions in the

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] References to petitioner in the singular are to Robert W. McMichael.

[3] The following is a summary of the relevant facts drawn from the entire record that do not appear to be in dispute. These facts are stated solely for purposes of deciding the pending motions. Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

partnership and other Bentley Village entities.  Shortly thereafter, petitioner was excluded from all further partnership business--his office was locked, and he was told not to return to the site or to make contact with the partnership's employees.  In addition, Smith and Fowler transferred a management contract held by a corporation equally owned by petitioner, Smith, and Fowler, to an entity controlled by Smith and Fowler.

In 1987, petitioner filed suit in Florida State court against Fowler, Smith, the partnership, and related Bentley Village entities, alleging various causes of action including theft, fraud, and embezzlement.  The above-described litigation was eventually the subject of a negotiated settlement.

In discussions culminating in the settlement of the aforementioned litigation, petitioner, Smith, and Fowler understood that they would not be able to reconcile their differences and that either Smith and Fowler, on the one hand, or petitioner, on the other, would have to relinquish their ownership interests in Life Care and the related Bentley Village entities.  Initially, attempts at settling the dispute were hampered by the parties' inability to agree as to the value of the various Bentley Village entities.  In this regard, by letter dated June 15, 1988, Marshall G. Reissman (Mr. Reissman), counsel for Smith and Fowler, wrote to Stanley W. Rosenkranz (Mr. Rosenkranz), counsel for petitioner, proposing that the

litigation be settled by petitioner's relinquishing his interests in the various Bentley Village entities, including Life Care, to Smith and Fowler, for an immediate payment of $500,000, a $100,000 annual consulting fee for 5 years, and a lump-sum payment at the end of 5 years at a price to be determined under a mutually agreeable formula.

The litigation eventually was settled on January 12, 1989, pursuant to an agreement entitled "Mutual Release and Settlement Agreement" (the settlement agreement). Contrary to the terms set forth in Mr. Reissman's June 15, 1988, letter, the settlement agreement provides alternative options respecting the sale of the parties' respective partnership interests. Specifically, the settlement agreement allowed petitioner an 8-month period within which to exercise an option to purchase Smith's and Fowler's partnership interests in Life Care. However, during this same 8-month period, Smith and Fowler could preempt petitioner by exercising their own options to purchase petitioner's partnership interest in Life Care. The settlement agreement further stated that, in the event that petitioner did not exercise his option within the prescribed 8-month period, Smith and Fowler would be required to pay petitioner $2,370,000 that would be allocated 50 percent to a consulting fee and 50 percent to the purchase of petitioner's interests in the various Bentley Village entities,

including petitioner's partnership interest in Life Care. The settlement agreement includes a paragraph that states:

> In exchange for a cash payment of Two Hundred Thousand Dollars ($200,000.00) at the time the Mutual Release and Settlement Agreement is executed, all existing lawsuits would be dismissed with prejudice and complete releases would be exchanged with McMichael.

Petitioner was paid $200,000 upon the execution of the settlement agreement.

Petitioner did not exercise his option to purchase Smith's and Fowler's partnership interests in Life Care. By letter dated November 16, 1989, Mr. Reissman advised Mr. Rosenkranz that Smith and Fowler would purchase petitioner's interests in the various Bentley Village entities pursuant to the agreement dated January 12, 1989, and that it was his clients' position that the sale would be effective January 12, 1989. On June 30, 1990, petitioner, Smith, Fowler, and other interested parties executed an agreement (the sale agreement) providing for the transfer of petitioner's interests in the Bentley Village entities, including Life Care, to Smith, Fowler, and others, for $2,570,000. The agreement states that $200,000 of the purchase price was paid upon execution of the settlement agreement.

Life Care issued petitioner Forms K-1 for each of the taxable years 1989 and 1990. However, petitioners decided to exclude petitioner's distributive share of the partnership's items of income, loss, deduction, and credit in their joint

Federal income tax returns for 1989 and 1990 on the ground that petitioner was no longer a partner in Life Care after January 12, 1989.

On June 27, 1994, respondent mailed separate notices of final partnership administrative adjustment (FPAA) to the tax matters partner (TMP) for Life Care determining adjustments to the partnership's tax returns for 1989 and 1990. On August 8, 1994, respondent mailed a copy of the FPAA to petitioners. Each of the FPAA's contains identical language stating:

> It is determined that the purchase and sale of partnership interests between partners Robert McMichael, Hudson Fowler, and Raymond Smith was effective on June 30, 1990 rather than on January 13, 1989. The correct distributive shares of partnership income, loss, deductions, and credits have been determined based on their ownership percentages in accordance with section 706 of the Internal Revenue Code.

The TMP for Life Care did not file a petition for readjustment with the Court respecting the above-described FPAA's. However, petitioners filed a timely petition with the Court ostensibly as partners other than the TMP.[4]

Discussion

1. Respondent's Motion To Dismiss for Lack of Jurisdiction and To Strike

As indicated, the petition for readjustment includes allegations that Johanna McMichael is entitled to relief as an

_____

[4] At the time the petition was filed, Life Care maintained its principal place of business in Naples, Florida.

innocent spouse under section 6013(e). Respondent moves to dismiss for lack of jurisdiction and to strike asserting that the Court lacks jurisdiction to address the matter in this partnership level proceeding.

It is now well settled that the Tax Court lacks jurisdiction to consider whether a taxpayer/partner is entitled to innocent spouse relief under section 6013(e) in the context of partnership level proceedings. See Dynamic Energy, Inc. v. Commissioner, 98 T.C. 48 (1992); Marthinuss v. Commissioner, T.C. Memo. 1995-58, and cases cited therein. The question of whether Johanna McMichael is entitled to innocent spouse relief can be raised in a partner level affected items proceeding following the issuance of a notice of deficiency by invoking the Tax Court's overpayment jurisdiction. See, e.g., Mann-Howard v. Commissioner, T.C. Memo. 1992-537. Consequently, we shall grant respondent's motion to dismiss for lack of jurisdiction and to strike.

2. Respondent's Motion for Partial Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment upon all or any part of the legal issues in controversy is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

Respondent argues for partial summary judgment on the basis that petitioner remained a Life Care partner until June 30, 1990. Respondent contends that the "clear and unambiguous" terms of the settlement agreement executed January 12, 1989, and the sale agreement executed June 30, 1990, support her position. Further, respondent contends that petitioner is precluded by the rule articulated in Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965), as adopted by the Court of Appeals for the Eleventh Circuit in Bradley v. United States, 730 F.2d 718 (11th Cir. 1984), from offering evidence to vary or counter the terms of the two agreements.[5]

---

[5] This case is appealable to the Court of Appeals for the Eleventh Circuit. Thus, although this Court has declined to adopt the rule of Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965), see

(continued...)

Petitioners assert that material issues of fact regarding the termination of petitioner's status as a Life Care partner remain in dispute and that the rule in Commissioner v. Danielson, supra, is not applicable under the circumstances presented.

For Federal tax purposes, the terms "partnership" and "partner" are defined in section 7701(a)(2) as follows:

> (2) Partnership and partner.--The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

See sec. 761(a). The existence or nonexistence of a partnership under State law is not determinative for Federal tax purposes. Commissioner v. Tower, 327 U.S. 280, 287 (1946); Frazell v. Commissioner, 88 T.C. 1405, 1412 (1987); Hensel Phelps Construction Co. v. Commissioner, 74 T.C. 939, 947-948 (1980), affd. 703 F.2d 485 (10th Cir. 1983).

In Commissioner v. Culbertson, 337 U.S. 733, 742 (1949), the Supreme Court held that, in determining whether a partnership has been formed for tax purposes, the proper inquiry is:

(...continued)
Coleman v. Commissioner, 87 T.C. 178, 202 n.17 (1986), affd. without published opinion 833 F.2d 303 (3d Cir. 1987), we would be obliged to follow the holding of Bradley v. United States, 730 F.2d 718 (11th Cir. 1984), if that case were directly on point. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

> whether, considering all the facts--the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent--the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * * [Fn. ref. omitted.]

As we see it, a similar inquiry is required where, as in the present case, the dispute concerns the date that an individual's status as a partner of a limited partnership is terminated.

Although one can draw an inference from both the settlement agreement and sale agreement that petitioner remained a Life Care partner until June 1990, the agreements do not define the membership of the Life Care partnership or otherwise address petitioner's status. The agreements do little more than describe the terms and conditions by which petitioner ultimately transferred his Life Care partnership interest. In this regard, we are not persuaded that the duration of petitioner's status as a Life Care partner is prescribed solely or unambiguously by the terms of the agreements.

Consistent with the preceding discussion, we conclude that respondent's reliance on Commissioner v. Danielson, supra, is misplaced. In short, Danielson stands for the proposition that, absent proof showing mistake, fraud, undue influence, duress, or the like, a taxpayer generally is bound by the terms of an

agreement to which he is a party where the agreement includes specific allocations or characterizations evincing tax consequences. See Schatten v. United States, 746 F.2d 319, 321-322 (6th Cir. 1984) (per curiam); Bradley v. United States, supra; Spector v. Commissioner, 641 F.2d 376 (5th Cir. 1981), revg. 71 T.C. 1017 (1979). Accordingly, an application of the Danielson rule does not abrogate our obligation to consider other factors such as the conduct and relationship of the parties. Commissioner v. Culbertson, supra.

The record in this case includes conflicting assertions as to whether petitioner remained a Life Care partner following the execution of the settlement agreement on January 12, 1989.[6] In addition to the inferences that may be drawn from the agreements, we note that Life Care issued Forms K-1 to petitioner for the taxable years 1989 and 1990 suggesting that the partnership considered petitioner a partner during those periods. On the other hand, there is no dispute that the parties negotiating the settlement agreement recognized that the animosity between petitioner and Smith and Fowler would preclude the continuation of the partnership as originally formed. In addition, petitioner submitted an affidavit stating that it was the intent of the parties to the settlement agreement that petitioner would no

---

[6] It appears that petitioner concedes that he was a partner until Jan. 12. 1989.

longer act as a Life Care partner after the execution of the settlement agreement and that he was in fact excluded from partnership activities after January 12, 1989. Consistent with these assertions, Mr. Reissman sent a letter to Mr. Rosenkranz dated November 16, 1989, advising that Smith and Fowler would purchase petitioner's interest in the various Bentley Village entities pursuant to the agreement dated January 12, 1989, and that it was their position that the sale would be effective January 12, 1989.

Viewing the known facts in a light most favorable to petitioner, we conclude that material facts remain in dispute and that additional factual development is necessary to resolve the question of whether petitioner remained a partner of Life Care until June 30, 1990. In particular, we are unable to determine from the record presented the intent of the parties respecting the composition of the Life Care partnership after the execution of the settlement agreement on January 12, 1989. Consequently, we will deny respondent's motion for partial summary judgment.

To reflect the foregoing,

<u>An order will be issued granting respondent's motion to dismiss for lack of jurisdiction and to strike and denying respondent's motion for partial</u>

<u>summary judgment</u>.